# PD-1651-15

PD-1651-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/18/2015 3:05:37 PM
Accepted 12/19/2015 11:11:30 AM
ABEL ACOSTA
CLERK

No. _____

## IN THE COURT OF

## CRIMINAL APPEALS OF TEXAS

────────

FREDERICK MANUEL, Appellant

VS.

THE STATE OF TEXAS, Appellee

────────

\* \* \* \* \* \* \* \* \* \*

From the First Court of Appeals, Cause Number 01-14-00107-CR
and the 331st District Court of Travis, County, Texas,
Cause Number D-1-DC-13-904096

\* \* \* \* \* \* \* \* \* \*

## PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

December 18, 2015

ABEL ACOSTA, CLERK

Ken Mahaffey
Counsel for Appellant
P. O. Box 684585
Austin, Texas 78768
(512) 444-6557
St. Bar No. 12830050
*Ken__Mahaffey@yahoo.com*

## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

IDENTITY OF JUDGE, PARTIES AND COUNSEL............................................... ii

STATEMENT REGARDING ORAL ARGUMENT.............................................. iii

STATEMENT OF PROCEDURAL HISTORY. .................................................. iii

INDEX OF AUTHORITIES. ............................................................................ iv

STATEMENT OF THE CASE AND SUMMARY OF ARGUMENT. ................... 1

GROUND FOR REVIEW...................................................................................2

> **Can a search warrant be based on the affiant's belief that criminals routinely keep evidence of a crime at their homes so that there is probable cause to search three months after the offense even though no person said they observed any of the items sought at that location?**

REASONS FOR REVIEW:

1. The Court of Appeals decision conflicts with other courts of appeal on the same issue, specifically *Rowell* v. *State*, 14 S.W.3d 806, 810 (Tex. App. - Houston [1st Dist.] 2000, *affirmed* 66 S.W.3d 279)(information that convicted felon pawned and redeemed guns, insufficient for search of residence without any showing firearms had ever been seen there); *Robuck v. State*, 40 S.W.3d 650, 654-55 (Tex. App. - San Antonio 2001, pet. ref'd)(while dog sniff and other factors provided probable cause to search a box mailed to defendant, even evidence that he was clearly a drug trafficker did not sufficiently focus on the location to provide probable cause to search his residence); *Ozuna v. State*, 88 S.W.3d 307, 313 (Tex. App. - San Antonio 2002, pet. ref'd) ("Information regarding the defendant's possession of drugs, alone, is insufficient to warrant the search of his home" so proof resident traded stolen items for drugs elsewhere did not provide basis for believing that evidence would be found in his home).

2. The Court of Appeals has decided an important question of state or federal

i

law which has not been, but should be, settled by the Court of Criminal Appeals.

3. The Court of Appeals has decided an important question of state or federal law that is in conflict with an applicable decision of the Court of Criminal Appeals, in particular *Cassias v. State*, 719 S.W.2d 585, 589 (Tex. Crim. App. 1986)(history of drug arrests and credible assertion that defendant seen in possession of marijuana elsewhere did not show the contraband was actually in the residence to be searched).

PRAYER FOR RELIEF. ........................................................................... 8

CERTIFICATE OF SERVICE AND WORD COUNT. ........................................ 9


APPENDIX - COURT OF APPEALS OPINION

# IDENTITY OF JUDGE, PARTIES AND COUNSEL

The following is a list of all parties to the trial court's final judgment and their counsel in the trial court:

1. Trial Judge               Bob Perkins
331st District Court
P.O. Box 1748
Austin TX 78767-1748

2. Appellant:            Frederick Manuel
Polunsky Unit
01901942
3872 FM 350 South
Livingston, TX 77351

3. Defense Counsel:    Steve Brittain
Attorney at Law
1100 West Ave
Austin, TX 78701 -2020

4. The State of Texas:   James R. Young
Travis Co. D. A.'s Office
P.O. Box 1748
Austin TX 78767-1748

## STATEMENT REGARDING ORAL ARGUMENT

The Court of Appeals has made a sweeping change in Fourth Amendment law asserting it its "common experience" that anyone suspected of a crime will keep evidence of a crime in their residence. Oral argument will be useful to address the specific allegations in the challenged warrant and authorities relied upon by the Court of Appeals. It will also be helpful to qualify authority from other jurisdictions on this issue.

## STATEMENT OF PROCEDURAL HISTORY

On November 5, 2015, the First Court of Appeals issued an opinion affirming appellant's judgment of conviction. The Court ordered the opinion published. A link to that opinion is listed below:

http://www.search.txcourts.gov/SearchMedia.aspx?MediaVersionID=f8f740e5-56b2-44e4-bc7d-ba3391f9ba0d&coa=coa01&DT=Opinion&MediaID=db147244-2e7b-4f70-a4be-b5256baea72d

A motion for rehearing was filed on November 13, 2015 and overruled on December 8, 2015. Appellant now files this Petition for Discretionary Review with this Court within thirty (30) days after the Court of Appeals made its final ruling on the cause.

# INDEX OF AUTHORITIES

**CASES**:

**State Cases**:

*Arrick* v. *State*, 107 S.W.3d 710 (Tex. App. -
    Austin 2003, pet. ref'd). ........................................................ 5

*Arrick* v. *State*, 107 S.W.3d 710 (Tex. App. - Austin 2003, pet. ref'd).......... 5

*Cassias v. State*, 719 S.W.2d 585 (Tex. Crim. App. 1986). .......................... 4

*Rodriguez v. State*, 232 S.W.3d 55 (Tex. Crim. App. 2007). ........................ 4

*Rowell v. State*, 214 S.W.3d 806, 810 (Tex. App. -
    Houston [1st Dist.] 2000), aff'd, 66 S.W.3d 279
    (Tex. Crim. App. 2001). ........................................................ 4

*Serrano v. State*, 123 S.W.3d 53 (Tex. App. -
    Austin 2003, pet. ref'd). ........................................................ 4

**Federal Cases**:

*Iverson  v. North Dakota*, 480 F.2d 414 (8th Cir.), *cert. denied*,
    414 U.S. 1044 (1973). ........................................................ 6

*Stanford v. Texas*, 379 U.S. 476,  481 (1965).................................... 7

*United States v. Grubbs*, 547 U.S. 90 (2006). ................................. 3

*Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970,
    56 L.Ed.2d 525 (1978). ........................................................ 7

**Federal Constitution**:

U.S. CONST. AMEND. IV. ......................................................................... 3

**Secondary Authority**:

2 Wayne R. LaFave, Search and Seizure § 3.7(d) (3d ed. 1996). ................... 2

**IN THE COURT OF**

**CRIMINAL APPEALS OF TEXAS**

─────────

FREDERICK MANUEL, Appellant

VS.

THE STATE OF TEXAS, Appellee

─────────

## PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

COMES NOW Frederick Manuel, appellant, through counsel, Ken Mahaffey, and respectfully submits this Petition for Discretionary Review.

### STATEMENT OF THE CASE
### AND SUMMARY OF ARGUMENT

Appellant, Frederick Manuel, was convicted in jury trial of capital murder in a convenience store robbery alleged to have been committed on January 20, 2011. The jury assessed a sentence of life imprisonment. The Court of Appeals held a warrant to search Appellant's residence was supported by probable cause because common experience showed that criminals keep evidence of their crimes in their homes. The warrant issued three months after the offense. Appellant argues that instead affidavits

1

should state particular facts showing the items to be sought were actually seen or located at the residence to be searched and also facts showing those items are still located there. This has long been the law and the Court of Appeals has greatly expanded what will be sufficient to show items are in the place to be searched by reliance on proof a crime was committed elsewhere.

## GROUND AND REASONS FOR REVIEW

**Ground for Review:**

> **Can a search warrant be based on the affiant's belief that criminals routinely keep evidence of a crime at their homes so that there is probable cause to search three months after the offense even though no person said they observed any of the items sought at that location?**

## ARGUMENT AND AUTHORITIES

**I. Introduction**.

"Probable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home." 2 Wayne R. LaFave, Search and Seizure § 3.7(d) (3d ed. 1996). At issue here is a residential search warrant that focuses on appellant personally as a suspect of crime committed elsewhere but did not articulate any facts showing the items sought had been seen at his residence. (RR9 SX 81, p. 153). A warrant affidavit must permit the magistrate ". . . to determine (1) that it is *now probable* that (2) contraband . . . *will be* on the described

2

premises (3) *when the warrant is executed.*" *United States v. Grubbs*, 547 U.S. 90, 96 (2006)(emphasis in original); U.S. CONST. AMEND. IV. The question is whether suspicion that one committed a crime at another location months before the warrant application supports a search of the suspect's home solely because the affiant thinks there might be evidence in his residence.

## II. The Court of Appeals Holding.

The search warrant considered by the Court of Appeals focused suspicion on Appellant personally and authorized a search of his home for evidence of a convenience store robbery three months prior to the warrant. (RR9 SX 81, p. 153). This affidavit contained many specifics like Appellant's address, the type of car he drove and information that he owned a jacket similar to the one seen in the surveillance video. *Id*. However, the affidavit did not state any facts showing that the items sought under the search warrant were actually at the residence. *Id*. The Court of Appeals held that ". . . common experience tells us that there is a 'fair probability' that clothing worn 'a lot' over a period of years will be kept at a person's residence." Slip Op. p. 11.

The Court of Appeals acknowledged that several cases from other courts, including this Court, require there to be specific information that the items to be sought are actually at the location at the time the warrant issued. Slip Op. pp. 7 - 9.

3

The Court also noted that several cases have found the belief that criminals keep items like drugs or firearms at their residences insufficient without some showing the items were ever seem in the residence and were still at that location. *See e.g., Cassias v. State*, 719 S.W.2d 585, 586–587 (Tex. Crim. App. 1986) (observance of packages going into home did not establish that alleged drug dealer sold drugs from his home); *Rowell v. State*, 214 S.W.3d 806, 810 (Tex. App. - Houston [1st Dist.] 2000), aff'd, 66 S.W.3d 279 (Tex. Crim. App. 2001) (other than police experience nothing showed an actual firearm would be at the residence six months after purchase); *Serrano v. State*, 123 S.W.3d 53, 63 (Tex. App. - Austin 2003, pet. ref'd) (evidence defendant dealt in drugs did not establish probable cause that drugs would be at defendant's home). The Court of Appeals then concluded that clothing is different than drugs and firearms because those items can be taken or used somewhere else. Slip Op. p. 11.

## III. Court of Appeals' Reasoning.

The lower court based its holding on three principal cases, none of which support such a broad conclusion. The first was from this Court, i.e., *Rodriguez v. State*, 232 S.W.3d 55 (Tex. Crim. App. 2007). In *Rodriguez*, the Court did not rely on "common experience" to find a sufficient probability that evidence of a crime would be in the residence. Instead, the resident specifically told the officers there were drugs in the residence. *Id*. at 57. As a result, the Court of Appeals' reliance on *Rodriguez,*

4

*supra*, to show common experience can support a probable cause determination is misplaced. It was this admission the items were actually in the place to be searched that supported the probable cause determination, not the belief that criminals keep evidence in their homes. *Id*.

The Court of Appeals also cited *Arrick* v. *State*, 107 S.W.3d 710 (Tex. App. - Austin 2003, pet. ref'd). In *Arrick* v. *State*, 107 S.W.3d 710 (Tex. App. - Austin 2003, pet. ref'd), the defendant bragged to numerous people about committing the murder providing details concerning his transport of the body. *Id*. at 716. He also described a particular gun souvenir he had made to commemorate the event. *Id*. The affidavit established a probability that the suspect would have gotten blood on his clothing and on the carpet of his home during the offense. *Id*. at 717. It was also reasonable to infer the suspect would keep the souvenir since he obviously expended great effort to create it and displayed it to others. *Id.* at 717. Here, the Court of Appeals does not point to anything in suggesting appellant would have been spattered with blood that would still be present months later or created. Nor is there any suggestion he possessed a distinctive object that he showed to others while admitting the offense. *Arrick*, *supra*, is simply not authority for the proposition that it is common knowledge that murderers habitually keep items of evidentiary value in their homes.

The Court of Appeals also reached out to another jurisdiction by citing *Iverson*

5

*v. North Dakota*, 480 F.2d 414 (8th Cir.), *cert. denied*, 414 U.S. 1044 (1973)(the day after murder defendant admitted being in victim's reside in last 48 hours and had visible scratches on his body). The opinion quoted out of context certain language in *Iverson, supra*, specifically that a magistrate may take into account "'. . . considerations of everyday life on which reasonable and prudent men act.'" Slip Op. p. 9, *citing Iverson*, 480 F.2d at 418. While this phrase does appear in the *Iverson* decision, the reference was to the fact that victims of the type of murder would resist. Specifically, the *Iverson* opinion states as follows:

> ". . . [i]t is reasonable to assume that in a violent crime such as murder there would be blood present, and that female victims would fight with the weapons available to them-their hands and fingernails. Accordingly, it would be reasonable to assume that their assailant would bear scratch marks."

*Iverson*, *supra* at 418. This case simply does not say that suspicion of a crime committed elsewhere supports a general search warrant for the suspect's home because it is a known fact that criminals keep evidence in their homes. Instead, the *Iverson* court found the warrant was based on timely information specifically focused suspicion on the place to be searched because the defendant would have returned home there soon after the offense with blood on his person. *Id* This quite different from assuming items would be present three months after the offense.

The Court of Appeals also found the information was timely because the affiant stated he had received information within the last 24 hours. Slip Op. p. 20. However,

6

this misreads the affidavit. The information relied upon by the opinion is an observation of a car similar to Appellant's on a video from the store. The affidavit actually states investigators had identified Appellant's car by color, make and license plate number on February 1, 2011; the warrant was issued on April 28, 2011. *See* SX 81 p. 3 - 4. Moreover, the Court of Appeals did not explain why driving a car three months prior to issuance of the warrant made it sufficiently probable that certain items would be present in a remote residence.

**IV. Court of Appeals Holding Authorizes General Warrants.**

This Court should grant review because the Court of Appeals has essentially held that a warrant can be issued for the search of a suspect's home anytime there is probable cause to suspect him of a crime. *Stanford v. Texas*, 379 U.S. 476, 481 (1965)(Fourth Amendment motivated by need to prohibit "general warrants" to search for evidence anywhere officers think they might find evidence of wrong doing). The key element is not whether a particular person is suspected of a crime, but whether there are articulable facts showing that the items to be seized will be found in the place to be searched. *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 - 557 n. 6, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)(citing legal scholars to show probable cause to arrest a particular person does not equate with probable cause to search a particular place). The Court of Appeals has greatly expanded the scope of what will support a

7

finding of probable cause to search a residence and this Court should grant review and provide guidance on the proper standard of review for evaluating "consideration of every day life" in probable cause determinations.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, appellant respectfully prays that this Court grant Discretionary Review and upon submission, reverse the judgment of the Court of Appeals.

Respectfully Submitted,

Ken Mahaffey
Counsel for Appellant
P.O. Box 684585
Austin, Texas 78768
Phone & Fax (512) 444-6557
St. Bar. No. 12830050
*Ken_Mahaffey@yahoo.com*

## CERTIFICATE OF SERVICE AND WORD COUNT

The above signature certifies that on this day, December 18, 2015, a true and correct copy of the foregoing Petition this document was sent by electronic service to the Travis County District Attorney's Office, P.O. Box 1748, Austin TX 78767-1748 and to the State Prosecuting Attorney, P.O. Box 12405, Austin, TX 78711 and mailed to the appellant, Frederick Manuel, Texas Department of Crim. Just., Polunsky Unit, 3872 FM 350 South, Livingston, TX 77351. The above signature also certifies that this document contains 2695 words in compliance with Rule 9.4 (I) (2) (D), Tex. R. App. Proc. (not to exceed 4,500 words).

**APPENDIX - COURT OF APPEALS OPINION**

**Opinion issued November 5, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00107-CR

————————————

**FREDERICK MANUEL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 331st District Court**
**Travis County, Texas[1]**
**Trial Court Case No. D-1-DC-13-904096**

---

**O P I N I O N**

---

[1] The Texas Supreme Court transferred this appeal from the Court of Appeals for the Third District of Texas. Misc. Docket No. 14-0001 (Tex. Jan. 7, 2014); *see* TEX. GOV'T CODE ANN. § 73.001 (West 2011) (authorizing transfer of cases). We are unaware of any conflict between precedent of the Court of Appeals for the Third District and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

Frederick Manuel appeals the trial court's denial of his motion to suppress. Manuel was convicted of capital murder with a deadly weapon and sentenced to life imprisonment. In his single issue, Manuel argues that the affidavit supporting the search warrant that allowed the police to seize evidence linking him to the shooting did not establish probable cause. We affirm.

## Background

One January evening, a man walked into the store, shot the clerk, and took money from the cash register. During the subsequent police investigation, the police's "main goal" was to identify the shooter shown in a security camera video that recorded the murder. The video suggested that the shooter was a six-foot tall "black male." The man was wearing a blue jacket with a light stripe on the sleeves, jeans, tan boots, and a dark mask. The Austin Police Department worked with local Austin news media outlets to receive tips to identify him.

The police began receiving phone calls in response to media coverage. A few weeks after the shooting, an anonymous caller told the police that the man in the video was Frederick Manuel. The caller also told the police the address of Manuel's residence, a description of his residence, and the name of Manuel's landlord. The police were able to verify all of the information provided by the caller.

2

The police then interviewed Manuel's former supervisor at an apartment complex where Manuel worked for two years. The supervisor recognized the jacket in the surveillance footage as a jacket Manuel wore to work over "a couple years" when "the temperatures became cold"—a jacket she had "seen [] a lot" during those years. A former coworker of Manuel's at the apartment complex identified the man in the video as Manuel based on the man's appearance and "gait." The police investigation uncovered a police report on a robbery that occurred at that complex while Manuel worked there by a six-foot tall "black male" wearing a blue jacket with light stripes on the sleeves, similar to the one the shooter wore in the convenience store shooting.

After reexamining the security video, the police noticed that a white, four-door 1989-style Chevy Caprice drove past the convenience store heading in the direction of Manuel's residence shortly before the murder. After the shooting, the man in the video walked in the same direction the car had been driving. While conducting surveillance on Manuel over three months after the murder, the police saw Manuel driving a vehicle that appeared to match the car in the video.

The day after observing Manuel driving the vehicle, the police obtained a warrant to search Manuel's residence to find, among other things, "[f]irearms" and "[c]lothing described as blue jacket with stripe on sleeves and hood, jeans, tan shoes, [d]ark colored masks used to cover the face area, and dark colored gloves."

3

After executing the warrant, the police seized evidence from Manuel's residence: tan boots, blue jeans, a glove, and a black mask—all matching the clothing of the man in the security video.

After being indicted, Manuel filed a pretrial motion to exclude this evidence, arguing the search violated his constitutional rights because the warrant was not supported by probable cause. The trial court denied the motion.

Manuel's first trial ended in a mistrial when, in violation of a previous trial court order, a State witness testified to a previous extraneous offense by Manuel. At his second trial, Manuel repeated his argument that the search warrant was not supported by probable cause in a motion for directed verdict, which the trial court denied. Manuel was convicted of capital murder with a deadly weapon and sentenced to life in prison.

## Probable Cause in the Affidavit Supporting the Search Warrant

Manuel argues that the trial court should have granted his motion to suppress because the affidavit supporting the search warrant did not establish probable cause for three reasons: the affidavit did not establish (1) that relevant evidence was at his residence, (2) the police officer's "experience and training," or (3) a timely connection between any evidence at Manuel's residence and the murder.

## A. Standard of review

We review a trial court's denial of a motion to suppress using a bifurcated standard of review and give almost total deference to the trial court's findings of fact while reviewing the trial court's application of the law de novo. *Id.*; *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Courts apply a highly deferential standard because of the constitutional preference for law enforcement officials to obtain warrants rather than conduct warrantless searches. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). After-the-fact, de novo review of the sufficiency of affidavits is disfavored. *Id.* at 272.

Under Texas law, "[n]o search warrant shall issue . . . unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance" and "[a] sworn affidavit setting forth substantial facts establishing probable cause" is filed with the search warrant request. TEX. CODE CRIM. PROC. ANN. art. 18.01(b) (West Supp. 2011). When a trial court examines whether there is probable cause to support a search warrant, the trial court is constrained to the four corners of the affidavit. *McLain*, 337 S.W.3d at 271. The sworn affidavit must set forth facts sufficient to establish probable cause:

> (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property

> or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched.

TEX. CODE CRIM. PROC. ANN. art. 18.01(c) (West Supp. 2011).

Courts employ a totality-of-the-circumstances analysis for probable-cause determinations. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983). The magistrate must make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit, a fair probability exists that evidence of a crime will be found in a particular place. *Id.* The reviewing court ensures that the magistrate had a "'substantial basis' for . . . concluding that probable cause existed." *Id.* at 230, 103 S. Ct. at 2331 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960)). "This 'substantial basis' standard of review 'does not mean the reviewing court should be a rubber stamp but does mean that the magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon de novo review.'" *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010). Our inquiry, then, is whether the four corners of the affidavit contain sufficient facts, and inferences from those facts, to establish a "fair probability" that evidence of a particular crime will likely be found at a given location. *Rodriguez v. State*, 232 S.W.3d 55, 62 (Tex. Crim. App. 2007); *Massey v. State*, 933 S.W.2d 141, 148 (Tex. Crim. App.

6

1996); *McKissick v. State*, 209 S.W.3d 205, 212 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

**B.    Probable cause for items located at Manuel's residence**

The affidavit supporting the search warrant must set forth facts sufficient to establish probable cause "that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched." TEX. CODE CRIM. PROC. ANN. art. 18.01(c).

Manuel argues that the police officer's "affidavit does not state facts showing the evidence sought was probably *in that particular* residence at the time the warrant issued." The State replies that the security video demonstrates that Manuel "came from his residence . . . to the [convenience store] to commit the crime and went from the [convenience store] back to his residence with the clothing and gun he used to commit the offense. These facts and reasonable inferences supported the magistrate's finding that there was a fair probability that these items may be found at [Manuel's] residence."

Being "highly deferential" to the magistrate's findings, we conclude that under the reasoning in *Rodriguez*, there was a "fair probability" that the items of interest—clothing and firearms—were at Manuel's residence. *Rodriguez*, 232 S.W.3d at 62. Assuming "an alleged murderer's living quarters [contain] clothing" is "reasonable" under the deference we are to give the issuing magistrate. *See*

*generally Bower v. State*, 769 S.W.2d 887, 902 (Tex. Crim. App. 1989), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991) (noting that courts around country have found probable cause to issue search warrants to find clothing in residences).

The facts underlying this case are similar to those in several other cases in which the defendant challenged a search warrant for lack of probable cause. For example, in *Arrick v. State*, the defendant challenged a search warrant, arguing that no probable cause existed to believe that the items of interest—his clothing, the murder weapon, and the victim's clothing and personal items—would be found at the defendant's residence or in his car. 107 S.W.3d 710, 716–17 (Tex. App.— Austin 2003, pet. ref'd). The Austin Court of Appeals concluded that probable cause existed to search the residence because the magistrate who issued the warrant could reasonably infer that the defendant might keep clothing at his residence. *Id.* at 717. There was also probable cause to believe that the other personal items might be found at the defendant's residence. *Id.*

In *Cuevas v. State*, the police observed pieces of broken glass at the scene of a murder and inferred that the glass came from a broken vehicle window. No. 13-11-00111-CR, 2012 WL 3134325, at *5–6 (Tex. App.—Corpus Christi Aug. 2, 2012, no pet.) (mem. op., not designated for publication). After finding other evidence linking the defendant to the murder, the police observed a car with a

8

broken window outside of the defendant's residence. *Id.* at \*6. The police obtained a warrant to search the defendant's residence for any evidence of the murder, including his clothing and the murder weapon. The court upheld the warrant, holding that "there was a fair probability that contraband or evidence of a crime would be found at appellant's residence." *Id.*

In *Iverson v. State of North Dakota*, the police began investigating the defendant after learning that he knew one of the murder victims and was with her near the time of the murder. 480 F.2d 414, 417 (8th Cir. 1973). Because the magistrate can "deal[] only with probabilities," the Eight Circuit held that the magistrate could assume that any clothing or personal items of the defendant connecting him to the murder would be found at the defendant's home based on the "factual and practical considerations of everyday life on which reasonable and prudent men act." *Id.* at 418. Thus, the warrant to search the defendant's residence was supported by probable cause.

Here there was likewise evidence suggesting that police officers would find evidence from the crime at Manuel's residence. The officer's allegation that a car, identical to Manuel's, was "driving north" toward Manuel's residence "past the store" around the time of the murder suggests that Manuel drove to his residence, then walked from his residence to the murder scene. The security video suggests

that he shot the clerk, took the money, and left the store walking in the direction of Manuel's residence.

In addition, Manuel's supervisor from 2008 to 2010 told the police that Manuel wore a jacket identical to the one in the security video to work during that time. Based on the "factual and practical considerations of everyday life," a "fair probability" exists that Manuel would keep clothing and any weapons he owned at his residence. *Iverson*, 480 F.2d at 418.

Manuel cites other cases in which courts of appeals did not find probable cause that the evidence would be at the defendant's residence. These cases can be distinguished because they did not deal with personal property, such as clothing, that would likely be at a residence. Most of these cases dealt with a search for illegal drugs. *See Cassias v. State*, 719 S.W.2d 585, 586–587 (Tex. Crim. App. 1986) (observance of packages going into home did not establish that alleged drug dealer sold drugs from his home); *Bannister v. State*, No. 07-06-0280-CR, 2008 WL 4627880, at *3–4 (Tex. App.—Amarillo 2008, no pet.) (mem. op., not designated for publication) (pictures of defendant using "marijuana pipe" to smoke marijuana did not establish probable cause that defendant stored marijuana at residence); *State v. James*, No. 03-07-00210-CR, 2007 WL 3225374, at *3–4 (Tex. App.—Austin 2007, no pet.) (mem. op., not designated for publication) (although defendant manufactured methamphetamine, no evidence that he manufactured it at

10

home); *Serrano v. State*, 123 S.W.3d 53, 63 (Tex. App.—Austin 2003, pet. ref'd) (evidence defendant dealt in drugs did not establish probable cause that drugs would be at defendant's home); *State v. Ozuna*, 88 S.W.3d 307, 313 (Tex. App.—San Antonio 2002, pet. ref'd) (no probable cause that suspect who traded stolen items and drugs conducted this trade from his home or kept any of these items at his home); *Bradshaw v. State*, 40 S.W.3d 655, 661 (Tex. App.—San Antonio 2001, pet. ref'd) (evidence defendant dealt in drugs did not establish probable cause that drugs or other evidence would be at defendant's home).

These cases can be distinguished because, unlike clothing, drugs may not necessarily be stored in a home. For example, drugs may be stored at the location where the drugs are sold. *See generally James*, 2007 WL 3225374, at *3–4 (holding evidence of manufacture of drugs does not establish that drugs were manufactured at home). Similarly, persons in possession of a small amount of drugs may only possess them on their person. *See generally Bannister*, 2008 WL 4627880, at *3–4 (holding evidence defendant used drugs on one occasion does not show probable cause defendant had drugs at home). On the other hand, common experience tells us that there is a "fair probability" that clothing worn "a lot" over a period of years will be kept at a person's residence. *See Rodriguez*, 232 S.W.3d at 62; *Cuevas*, 2012 WL 3134325, at *5–6; *see also Arrick*, 107 S.W.3d at 716–17.

Manuel also cites two non-drug cases. The first of these is *Rowell v. State*, a case in which the police obtained a search warrant to search for illegal firearms at a convicted felon's house.[2] 14 S.W.3d 806, 810 (Tex. App.—Houston [1st Dist.] 2000), *aff'd*, 66 S.W.3d 279 (Tex. Crim. App. 2001). This Court held that there was no probable cause to support the search warrant because "[t]here is no indication the appellant took the firearms to his residence . . . . The affidavit does not indicate the location of the [store from which defendant acquired the firearms] in relation to the appellant's residence . . . . Other than [the police's] past experience with other felons, there is nothing in his affidavit from which the magistrate could have presumed the firearms were ever at . . . the appellant's residence . . . much less remained there [for] six months . . . ." *Id.*

This affidavit is distinguishable. In *Rowell*, no evidence showed that the firearms were ever at the defendant's residence. Here, "everyday experience" tells us that a person would likely have kept items of clothing that he wore "a lot" over a period of many "years" in his residence. In addition, the facts in the affidavit suggest that Manuel came from his residence to the convenience store, shot the clerk, robbed the store, then left the store and returned to his residence wearing the clothes used in the robbery. Thus, there is evidence that the clothes likely came from, and returned to, Manuel's residence—in stark contrast to *Rowell*.

---

[2] The issue of the existence of probable cause to locate the murder weapon is not before us because the police did not locate any firearms at Manuel's residence.

12

The second of the non-drug cases Manuel cites is *State v. Klendworth*, a case in which the police were searching for stolen property. No. 12-09-00409-CR, 2010 WL 3003624, at *1–2 (Tex. App.—Tyler July 30, 2010, no pet.) (mem. op., not designated for publication). The police found most of the stolen property on or near a boat by the defendant's home. *Id.* at *2. But because the affidavit did not contain any facts indicating that the remaining stolen property was in the defendant's residence, no probable cause existed that the stolen property was there. *Id.* at *4. The Tyler court affirmed the trial court's motion to suppress. *Id.* at *1.

This case is different from *Klendworth* for two reasons. First, the nature of the items to be seized is very different. In *Klendworth*, the police were looking for another individual's stolen property (most of which was found elsewhere); here, the police were looking for the suspect's personal clothing (for which a "fair probability" existed that it likely was in the suspect's residence). Second, in *Klendworth*, no specific evidence pointed to the stolen property being inside the defendant's residence. Here, there is evidence to support an inference that Manuel returned to his residence after the shooting, wearing the same clothing. Thus, under the high level of deference we are to give the issuing magistrate, the "magistrate's decision should carry the day." *Flores*, 319 S.W.3d at 702.

## C. Police officer supported his "experience and training"

Manuel argues that the affidavit "relies on [the officer's experience and training] to support his allegations that any suspect of murder will keep either firearms or other evidence in his home. However, this 'experience and training' must be detailed in some form in the affidavit." The State responds that "[t]hough the information provided was minimal, [it] is sufficient to establish a basis of specialized training and experience upon which a magistrate could rely."

A magistrate may factor "law enforcement training or experience . . . into a reasonable-suspicion analysis . . . . [O]bjective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion. But reliance on this special training is insufficient to establish reasonable suspicion absent objective factual support." *Ford v. State*, 158 S.W.3d 488, 494 (Tex. Crim. App. 2005).

Thus, an officer may not "simply rel[y] on his experience and training to arrive at [a] conclusion" if there is an "absence of such facts supporting those opinions" that "prevents [the court] from assessing" the existence of probable cause. *Grimaldo v. State*, 223 S.W.3d 429, 434 (Tex. App.—Amarillo 2006, no pet.). Some level of experience may, however, be inferred from statements within an affidavit. For example, an affidavit identifying an officer as an "officer on

patrol" has allowed a magistrate to infer that the officer was a "local police officer" and had the "experience" of a typical "police officer in today's society." *Davis v. State*, 202 S.W.3d 149, 156–57 (Tex. Crim. App. 2006).

Here, the affidavit identifies the officer as a "peace officer under the laws of Texas" who is working with a "homicide investigator" and other police officers in the investigation of the shooting. We can, thus, assume that the officer has the experience of a typical "officer in today's society." *Id.* Officers may take into account "considerations of everyday life on which reasonable and prudent men" rely. *Iverson*, 480 F.2d at 418. It is this everyday experience that would have informed the officer that the suspect's personal clothing was being kept at his residence, not some level of special training or experience that would need to be disclosed in the affidavit.

With the high level of deference we are to give the issuing magistrate, we conclude that a "reasonable and prudent" magistrate could reasonably infer that Manuel's clothes, boots, and masks would likely be kept in his residence— especially because he wore these clothes for years. No specialized police training is required to make that deduction.

Manuel cites two cases in which the appellate courts have held that an officer did not sufficiently outline his experience.[3] Both are distinguishable because, unlike this case, the officer claimed to rely on special training and experience beyond that of a layman.

In *Cassias v. State*, the officer claimed that, based on his experience, he knew that a package arriving at the defendant's residence contained marijuana. 719 S.W.2d at 589–90. The affidavit, which only described the officer's experience as having "observed several narcotic users," gave "no basis" for concluding that the officer's specialized experience enabled him to distinguish between an innocent package and a brick of marijuana. *Id.* at 586, 589.

In *Serrano v. State*, the officer relied on analysis from a "test" to determine that a "plastic baggie" contained cocaine. 123 S.W.3d at 63. The officer, however, did not disclose what type of test he conducted or that he performed any chemical analysis. *Id*. at 62. Without this information, or facts to allow the magistrate to conclude that the officer relied on the "senses, sight or taste" of an ordinary person, the magistrate did not have sufficient basis to evaluate facts that would establish probable cause. *Id.*

---

[3] Manuel also cites *Grimaldo v. State*, a case in which the police entered the defendant's residence without a warrant. 223 S.W.3d at 433–34. *Grimaldo* is not relevant because it did not deal with the sufficiency of an affidavit supporting a search warrant.

Here, the officer does not attempt to rely on any specialized experience or training to distinguish between "innocent" looking items and illegal contraband. The officer is relying on "considerations of everyday life on which reasonable and prudent men" rely in making an inference that a person keeps clothing at his residence. *Iverson*, 480 F.2d at 418.

## D. Connection between items and Manuel's residence was timely

Manuel next argues, "The affiant also does not explain why the magistrate should conclude the items would still be there months after the offense. Search warrant information cannot be stale." The State responds that the warrant to gather information was timely: "the most recent information [supporting the search warrant] was only twenty four hours old and even the oldest information was only three months and eight days old."

When issuing a warrant, the magistrate must show "(1) that it is now probable that (2) [the items] . . . will be on the described premises (3) when the warrant is executed." *United States v. Grubbs*, 547 U.S. 90, 96, 126 S. Ct. 1494, 1500 (2006); *see* TEX. CODE CRIM. PROC. ANN. art. 18.01(c) (providing that affidavit to support search warrant must show "that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched"). The facts attested to in the affidavit must be "so closely related to the time of the issu[ance] of the warrant as to justify a

17

finding of probable cause at that time." *Sgro v. United States*, 287 U.S. 206, 210, 53 S. Ct. 138, 140 (1932); *see Peltier v. State*, 626 S.W.2d 30, 32 (Tex. Crim. App. 1981).

"Probable cause ceases to exist when, at the time the search warrant is issued, it would be unreasonable to presume the items remain at the suspected place." *McKissick*, 209 S.W.3d at 214; *see Flores v. State*, 287 S.W.3d 307, 310, 312 (Tex. App.—Austin 2009), *aff'd*, 319 S.W.3d 697 (Tex. Crim. App. 2010). To determine whether it would be unreasonable to presume the items remain at the suspected place, we must consider the four *Crider* factors: (1) the type of crime; (2) the type of suspect, whether a "nomadic traveler, entrenched resident, or established ongoing businessman"; (3) the type of item to be seized, whether it be "perishable and easily transferred . . . or of enduring utility to its holder"; and (4) the place to be searched, that is whether it is "a mere criminal forum of convenience or secure operational base." *Crider v. State*, 352 S.W.3d 704, 708 (Tex. Crim. App. 2011). "[I]t *may be reasonable* under all the circumstances to presume that [the relevant items] are *still* where they once were—even after a considerable lapse of time." *Gonzales v. State*, 761 S.W.2d 809, 813 (Tex. App.—Austin 1988, pet. ref'd) (citing cases holding information in affidavit still timely after as long as two years).

"[A] magistrate, in assessing probable cause, may draw inferences from the facts and [find that] probable cause exists when the facts and circumstances shown in the affidavit would warrant a [person] of reasonable [caution] in the belief that the items to be seized were in the stated place." *Lopez v. State*, 535 S.W.2d 643, 647 (Tex. Crim. App. 1976) (internal citations omitted).

An officer acting within 24-hours of receiving information establishing probable cause acts in a timely manner. *Lopez*, 535 S.W.2d at 648. Even if the information establishing probable cause is over two years old, the information may still be timely if, based on the officer's experience, the evidence is "usually kept" for that amount of time. *Sanders v. State*, 191 S.W.3d 272, 279 (Tex. App.—Waco 2006, pet. ref'd, cert. den'd).

The four *Crider* factors indicate that the warrant was timely. The first factor does not weigh against the State: unlike an alcohol-related crime in which the blood alcohol level falls quickly, evidence from a murder—such as clothing—can exist for a lengthy period of time. *See Crinder*, 352 S.W.3d at 708 (holding that because "[a]lcohol in a person's bloodstream disappears quite rapidly," timing is more important in alcohol related offenses).

The second and fourth factors weigh in favor of timeliness: Manuel worked in the area for at least two years. The affidavit supported the inference that Manuel drove to his residence before the shooting, walked from the residence to the

convenience store, shot the clerk, and left the convenience store and returned to his residence. The anonymous caller informed the police within a few weeks of the shooting that Manuel lived at the residence in question. The officer obtained a search warrant within 24-hours of receiving the last piece of evidence (that Manuel drove a car identical to the one in the security video) linking Manuel to the shooting and verifying that Manuel still lived at that residence. The magistrate "may draw inferences" from these facts that Manuel was an "entrenched resident" and his residence a "secure" base where he lived for at least a few months.

The third factor also weighs in favor of the warrant being timely. The items located as a result of the search warrant were of "continuous" benefit to Manuel— he had worn the clothes "a lot" over a period of "a couple years"; thus "the passage of time [became] less significant." *McKissick*, 209 S.W.3d at 214. This evidence weakens any concern that the items being searched for would no longer be kept at the location.

Manuel cites *Kennedy v. State* for the general rule that "search warrant information cannot be stale." 338 S.W.3d 84, 93 (Tex. App.—Austin 2011, no pet.). *Kennedy* dealt with a search warrant that relied on information over two years old and distinguished many Texas cases because of the unique nature of the potentially "easily moveable" firearms at issue. *Id.* at 97–99. Nothing in the affidavit in that case suggested that the defendant would still have the illegal

firearm—the affidavit's sole basis for determining that the firearm ever existed was a "single observation of a possibly illegal firearm." *Id.* at 98. Here, the clothing was allegedly worn during two different crimes over the period of three months and was worn by Manuel "a lot" over the period of "a couple years" prior to the crime. Thus, unlike *Kennedy*, we can infer "a high probability" that the items "were on the property at the time of the warrant's issuance." *Id.* at 98.

Accordingly, we hold that the search warrant was supported by probable cause and overrule Manuel's only issue challenging the denial of his motion to suppress.

## Conclusion

We affirm the judgment of the trial court. We deny all pending motions as moot.

Harvey Brown
Justice

Panel consists of Justices Jennings, Higley, and Brown.

Publish. TEX. R. APP. P. 47.2(b).