Opinion issued November 22, 2016



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00442-CV

———————————

## IN THE MATTER OF D. R. B., III

———————————

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Case No. 2015-04361J**

———————————

## MEMORANDUM OPINION

This is an accelerated interlocutory appeal from the juvenile court's order waiving jurisdiction over appellant, a juvenile, and transferring jurisdiction to a criminal district court. In two issues, appellant challenges the legal and factual sufficiency of the evidence to support the juvenile court's findings of probable cause that he committed capital murder and that the welfare of the community

requires criminal proceedings. *See* TEX. FAM. CODE § 54.02(a), (f). We conclude that the juvenile court's determinations were supported by legally and factually sufficient evidence, and that the court did not abuse its discretion by certifying appellant to stand trial as an adult. Accordingly, we affirm.

## Background

Kenneth Flemings owned and operated a convenience store in Harris County. When a disturbance occurred outside his store involving a group of teenagers and young adults, he intervened, told them to leave, and flashed a handgun at Jalen Coby. At the time, Coby suggested that he also had a gun, and he knew when the store closed. Coby told Flemings that he would return in two weeks and threatened, "I'll get you."

Approximately two weeks later, appellant D.R.B., III, then age 15, entered the convenience store about an hour before it closed. His movement in the store was captured on surveillance video. He was looking for cigars or candy, but he left without buying anything. About an hour later, Flemings, his wife Camtu Nguyen, and their employee left the store, locked the door, and got into their three separate vehicles. Nguyen had taken the store's cash with her.

Surveillance video showed that just after the three entered their vehicles, Coby ran to the driver's side of Flemings's car, shot him in the head at extremely close range, and then motioned to appellant and another youth, both of whom were

2

wearing shirts over their faces. They ran to the car, opened the passenger-side doors, and searched the car briefly. All three men quickly fled as an unidentified car drove along the adjacent street and directed its headlights on the scene.

Nguyen emerged from her vehicle to summon help, and at one point she grabbed Flemings's handgun, which eventually ended up on the front passenger floorboard of his car. Flemings later was taken by ambulance to a hospital where he was pronounced dead. His wallet was found in the grass several blocks from the store a few days later, but there was no cash in it.

The State filed a petition alleging that appellant had committed capital murder, and that he engaged in delinquent conduct by "unlawfully, intentionally causing the death" of Flemings "while in the course of committing and attempting to commit" robbery by shooting him "with a deadly weapon, namely a firearm." Appellant was served with a petition asking the court to waive its exclusive original jurisdiction and transfer him to the criminal district court for further proceedings. The juvenile court ordered a certification examination, which was conducted prior to the two-day certification hearing.

At the hearing, Houston Police Department Sergeant M. Holbrook testified that he investigated the murder of Flemings. Sgt. Holbrook met Ray Rideaux, a neighbor who had been across the street at the time of the shooting. Rideaux identified appellant in court as the person who entered the convenience store about

an hour before the fatal shooting. When Rideaux heard the gunshot, he looked across the street, saw three black men at the scene, and heard someone yell, "kill the bitch too." He fired a round from his own handgun into the air as a warning shot, and then he saw the three men run from the scene.

Sgt. Holbrook made still images from the surveillance video and showed them to Officer Demby, a police officer assigned to the nearby public high school. Officer Demby identified appellant as one of the two young men who opened the passenger-side doors after Coby shot Flemings. Appellant was carrying a chrome weapon that flashed in the video. Sgt. Holbrook interviewed appellant at school. Appellant admitted that he was affiliated with the "103 Clique" street gang, he was involved with this offense, and he was aware of Coby's earlier encounter with Flemings.

Sgt. Holbrook also spoke with Coby, who was an adult at the time of the shooting. Coby turned himself in, and he quickly admitted his role in the offense. He told Sgt. Holbrook that someone gave him the gun used in the murder, and he believed it was not loaded. Sgt. Holbrook testified that the weapon was determined to belong to a close friend of appellant. Coby told Sgt. Holbrook that he confronted Flemings, who reached for a weapon. Coby said he fired the gun intending to frighten Flemings with an unloaded gun. Instead, Flemings was shot, and he slumped over bleeding onto the front passenger seat. Coby told Sgt. Holbrook that

4

he and appellant were members of the "103 gang," appellant knew he was planning to confront Flemings, and appellant was the person who took Flemings's wallet.

Psychologist Dr. Uche Chibueze testified about appellant's certification evaluation. She testified that a colleague, Dr. Linda B. Wittig, a child and adolescent psychiatrist, conducted the full competency evaluation and found appellant was "fit to proceed" in the case. Dr. Chibueze testified that appellant had been "out of control" while living with his mother. Though appellant denied that he had been abused, he admitted having physical altercations with his stepfather, sometimes striking first to gain a "competitive advantage." He admitted to being affiliated with the 103 Clique since the age of 13, and he said that the majority of the 30 fights he had been in during his life were gang-related. Dr. Chibueze testified that appellant was forthcoming about his hatred for rival gang members and his unprovoked aggression toward drug abusers.

Dr. Chibueze testified that although appellant is more agreeable and well-behaved when under the care of his grandparents, they had no idea that he was involved with gangs. In addition, appellant confessed to using a significant amount of cannabis daily and occasionally using codeine. She testified that appellant has an average I.Q. and no intellectual disabilities. She also explained that he had a "history of severe violations of people's rights" and, excluding the charged offense, he had a "high level of criminal sophistication." When asked about his

"overall risk of dangerousness," she said it was "high" compared with other adolescent offenders due to his low level of empathy and lack of regard for human life. She also noted that in the juvenile system he could benefit from various therapeutic and rehabilitative programs, and at age 16 he still had a significant amount of time to benefit from these programs.

Dr. Chibueze's amended certification evaluation report was introduced into evidence. This report took into account the results of various emotional and personality evaluations, including the Jesness Inventory Revised, the Personality Assessment Inventory Adolescent version, the Structured Assessment of Violence Risk in Youth, and the Risk Sophistication Treatment Inventory (RSTI).

In her report, Dr. Chibueze opined that appellant appeared more motivated for treatment than other adolescents who were not being seen in a therapeutic setting and that he reported a positive attitude. The Jesness Inventory suggested no strong evidence of antisocial tendencies. She wrote, "Among serious offenders, there is a lower risk of reoffending." As to the RSTI, appellant acknowledged a significant history of violence and a desire to harm rival gang members. He also reported that he had been selling drugs since the age of 13. Dr. Chibueze observed that his crimes tended to be premeditated and he was "likely to have a delinquent peer group." Dr. Chibueze further opined that appellant had an "average level of

intellectual-based sophistication," an "above average level of criminal sophistication and dangerousness," and "an above average level of maturity."

Appellant had only one prior referral to the Harris County Juvenile Probation Department. This referral was for evading arrest, and at the time of the report, it was still pending. Although appellant claimed he "adjusted well" on pre-adjudication supervision, he was detained for capital murder during that time. While in supervision, he received four disciplinary infractions, including one for gang-related violence and one for gang-related activity or material.

Dr. Chibueze expressed her concern that appellant had rated low on the RSTI's measure of empathy. Although appellant "scored in the high level of treatment amenability range on the RSTI," Dr. Chibueze nevertheless considered him to exhibit "an average level of treatment amenability in comparison to most individuals his age" because his "pervasive history of violating the rights of others" and his "entrenched involvement with his gang" were mitigating factors that impacted his "ability to benefit from treatment." Dr. Chibueze also stated that "without treatment, without legal consequences of any kind, and without time to mature, it would appear" that appellant is "at Moderately High risk for some type of reoffending in both instances when the index offense is included and excluded."

Private investigator Charles Marler was hired by the defense to investigate the offense. He testified that appellant was not involved with the murder of

7

Flemings. He testified that appellant believed he was to be "backup" when Coby beat up Flemings due to the prior incident. He testified that there was no plan to rob Flemings, but appellant admitted to being at the scene, having a gun, and looking in the car.

Michael Harrison, appellant's juvenile supervision officer, testified about the positive behavior he had exhibited while being in custody, saying that he does not cause problems, is highly intelligent, has goals for the future, and wants to improve his life. Appellant's grandfather testified that he and his wife, who works as a deputy constable, cared for appellant for a period of time when he was younger and his mother was in prison. The grandfather refused to acknowledge or believe that appellant was involved with a gang, blaming his bad behavior on his environment and his mother's poor parenting.

The juvenile court issued an order waiving its exclusive original jurisdiction and transferring the case to a district court. In doing so, it provided specific factual findings to support its decision.

**Analysis**

In two issues, appellant argues that the juvenile court abused its discretion by waiving jurisdiction because the evidence was legally and factually insufficient to support the two-pronged certification determination under Family Code Section 54.02(a)(2). In his first issue he argues that the evidence was insufficient to

support the determination that there was probable cause that he committed the alleged offense. *See* TEX. FAM. CODE § 54.02(a)(3). In his second issue he argues that the evidence was insufficient to support the determination that the welfare of the community required criminal proceedings. *See id*. § 54.02(a)(3), (f).

"Children ordinarily are not subject to criminal proceedings like adults." *In re S.G.R.*, 496 S.W.3d 235, 238 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Instead, when a child engages in conduct that would be considered criminal if committed by an adult, it is called "delinquent conduct," which includes, among other things, the violation of "a penal law of this state or of the United States punishable by imprisonment or by confinement in jail." TEX. FAM. CODE § 51.03(a)(1). Murder and capital murder, when committed by a minor, constitute delinquent conduct. *See id.*; *see also* TEX. PENAL CODE §§ 19.02, 19.03.

Juvenile courts have exclusive original jurisdiction over cases involving delinquent conduct by children between 10 and 17 years old. TEX. FAM. CODE §§ 51.02(2)(A), 51.04(a). A court may waive its exclusive original jurisdiction as to a child who is at least 14 years old when he is alleged to have committed certain felony offenses, including a capital felony, and no adjudication hearing has been conducted concerning that offense. *Id.* § 54.02(a)(2)(A). To support waiver of jurisdiction, the juvenile court also must determine, after a full investigation and a hearing, that (1) "there is probable cause to believe that the child before the court

committed the offense alleged" and (2) "because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings." *Id.* § 54.02(a)(3); *see Moon v. State*, 451 S.W.3d 28, 46–47 (Tex. Crim. App. 2014). If the juvenile court waives jurisdiction, it "shall state specifically in the order its reasons for waiver." TEX. FAM. CODE § 54.02(h).

On appeal, we review the legal and factual sufficiency of the evidence to support the juvenile court's specific findings. *Moon*, 451 S.W.3d at 47. Our sufficiency review is limited to the facts the juvenile court expressly relied on in its transfer order. *Id.* at 50. In conducting a legal sufficiency review, we view the evidence in the light most favorable to the findings, disregarding contrary proof unless a reasonable factfinder could not reject it. *S.G.R.*, 496 S.W.3d at 239. If there is more than a scintilla of evidence supporting a finding, then the proof is legally sufficient. *Id.* When reviewing the factual sufficiency of the evidence, we consider all of the evidence presented to determine if the juvenile court's findings are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.*

If the findings of the juvenile court are supported by legally and factually sufficient evidence, then we review the court's ultimate decision to waive jurisdiction under an abuse-of-discretion standard. *Moon*, 451 S.W.3d at 47. We will not substitute our discretion for that of the juvenile court, but only determine if

the court's waiver decision was made without reference to guiding rules and principles. *Id.* at 47–49; *see S.G.R.*, 496 S.W.3d at 239.

## I.      Probable cause that appellant committed the offense

Appellant argues that the evidence is legally and factually insufficient to support the court's finding that there was probable cause to believe that he committed capital murder. Under Texas law, and as relevant to this case, a person commits the offense of capital murder if he intentionally causes the death of an individual in the course of committing or attempting to commit robbery. TEX. PENAL CODE §§ 19.02(b)(1), 19.03(a)(2), 29.02; *see Nickerson v. State*, 478 S.W.3d 744, 755 (Tex. App.—Houston [1st Dist.] 2015, no pet.). A person is criminally responsible for an offense committed by another, among other reasons, if he acts with intent to promote or assist the commission of the offense by soliciting, encouraging, directing, aiding, or attempting to aid the other person to commit the offense. TEX. PENAL CODE § 7.02(a)(2). The juvenile court is required to state in its order the facts underlying its determinations. TEX. FAM. CODE § 54.02(h); *Moon*, 451 S.W.3d at 49–50. "Courts employ a totality-of-the-circumstances analysis for probable-cause determinations." *Manuel v. State*, 481 S.W.3d 278, 283 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)).

Appellant first contends that the order must be reversed because there are "no case specific findings of fact set forth in the order that support the probable cause determination." That argument apparently is premised on the order's lack of a separately denominated section of fact findings specifically connected to the probable-cause determination, because appellant also identifies specific factual findings from the court's order and argues why each, in isolation, is insufficient to connect him in a logical way to the offense for which was charged. For example, he isolates the court's finding that he acted with a "callous disregard for human life," and he responds that this is not an element of capital murder. He challenges the court's finding that he "cased" the store by arguing that his behavior of entering the store and leaving without having made a purchase was innocent and, in any event, the plan was never to rob the store but to assault Flemings.

Rather than analyzing each piece of evidence in isolation, a court evaluates probable cause by considering whether there are sufficient facts and circumstances to justify a prudent person in believing the suspect committed the offense. *See, e.g.*, *In re J.G.*, 495 S.W.3d 354, 374 (Tex. App.—Houston [1st Dist.] 2016, pet. filed). In this case, the evidence showed that appellant went to the store an hour before the offense, purchased nothing, then went across the street and told Coby that Flemings was there. Appellant returned to the scene after Coby shot Flemings. This time he was with a co-actor, and both had covered their faces with t-shirts. He

was carrying a gun. He opened the passenger-side car door and partially entered the car, where he would have seen Flemings slumped over the center console, bleeding from his head. He ran from the scene as a car approached. He confessed that he was aware of the prior confrontation that Coby had with Flemings and that he was carrying a gun that night. Coby told Sgt. Holbrook that he and appellant were both 103 Clique members, appellant knew he had a gun that night, and appellant took Flemings's wallet. In addition, Sgt. Holbrook testified the murder weapon belonged to appellant's close friend.

Considering the totality of the circumstances in the light most favorable to the juvenile court's order, we conclude that the evidence was legally sufficient to support the court's implied determination that a prudent person would be justified in believing appellant committed the charged offense. The contrary evidence was testimony from the private investigator. Cross-examination showed gaps in his investigation that could cause a reasonable factfinder to question the credibility of his statements or give less weight to his testimony. Thus, considering all of the evidence, we further hold that the court's determination of probable cause is not against the great weight and preponderance of the evidence and is supported by factually sufficient evidence.

We overrule the first issue.

## II.    Welfare of the community

In his second issue, appellant contends that the evidence was both legally and factually insufficient to support the court's findings regarding the statutory factors affecting whether the welfare of the community requires criminal proceedings. In particular, appellant asserts that the court did not properly credit the opinion evidence offered by Dr. Chibueze.

Before a juvenile court can waive jurisdiction, it must find "that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings." TEX. FAM. CODE § 54.02(a)(3). In making this determination, the court must consider the following non-exclusive statutory factors:

> (1)    whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;
>
> (2)    the sophistication and maturity of the child;
>
> (3)    the record and previous history of the child; and
>
> (4)    the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

*Id.* § 54.02(f). These factors enable the juvenile court to balance the potential danger that the juvenile poses to the public against his amenability to treatment and rehabilitation. *Moon*, 451 S.W.3d at 38.

14

The State bears the burden to prove by a preponderance of the evidence that waiver of the juvenile court's exclusive jurisdiction is appropriate. *S.G.R.*, 496 S.W.3d at 238. We first review the juvenile court's specific findings of fact regarding the Section 54.02(f) factors under "traditional sufficiency of the evidence review." *Moon*, 451 S.W.3d at 47. We then review the juvenile court's ultimate waiver decision under an abuse-of-discretion standard. *Id*. The State need not prove all four Section 54.02(f) factors; the juvenile court may make its determination, exercising appropriate discretion with reference to guiding rules and principles based on the strength of any combination of the criteria. *See id.* at 47 & n.78.

## A. Sufficiency of the evidence to support Section 54.02(f) findings

### 1. Offense against person or property

The first statutory factor asks whether the offense was against a person or property, "with greater weight in favor of transfer given to offenses against the person." TEX. FAM. CODE § 54.02(f)(1). In the transfer order, the juvenile court found that the alleged offense, capital murder, was "an offense against the person of another." The court found certain facts "particularly egregious and aggravating." These facts included appellant's use of a firearm, his role in planning the crime by going to the store an hour before the shooting and then waiting with his co-actors until Flemings closed the store, his cooperation and participation in the offense,

15

and his opening the car door to aid in theft as Flemings bled from a gunshot wound to his head.

Appellant admitted having a gun with him, entering the store prior to the actual shooting, and opening the car door. He denied stealing anything, but Sgt. Holbrook testified that Coby told him that appellant had stolen the wallet. In addition, the offense was captured on surveillance video. We conclude legally and factually sufficient evidence supported the determination that the alleged offense was against a person.

### 2. Sophistication and maturity of the child

The second statutory factor considers the "sophistication and maturity of the child." *Id.* § 54.02(f)(2). In the transfer order, the juvenile court relied on the report and testimony pertaining to the psychological evaluation performed by Dr. Chibueze. The court found that appellant has an average I.Q., an average level of intellectual sophistication, an above-average level of criminal sophistication and dangerousness, and an above-average level of maturity—all compared to offenders his age. The court also found that despite a high score on a treatment amenability test, Dr. Chibueze opined that his "pervasive history of violating the rights of others and his entrenched involvement with his gang" were "mitigating factors that impact his ability to benefit from treatment." All of the statements in the court's order about Dr. Chibueze's determinations are supported by her testimony or the

16

psychological report. As such, we conclude that the evidence is legally and factually sufficient to support the court's findings.

Appellant questions some of the assumptions implicit in Dr. Chibueze's opinions, such as whether appellant knew that Coby intended to murder Flemings. While such doubt could affect the weight the factfinder would give to the evidence, it did not contradict the evidence that was adduced.

### 3. Record and previous history of the child

The third statutory factor considers the "record and previous history of the child." *Id.* § 54.02(f)(3). In the transfer order, the court found that appellant had four behavior infractions while in the Harris County Juvenile Detention Center, he admitted to having physical altercations with his stepfather, which he sometimes instigated to gain an advantage, and that he had been in 30 fights in his lifetime. In addition, the court took note of appellant's confessed association with the 103 Clique, his admission to having instigated unprovoked physical assaults on rival gang members, and his display of weapons as a form of intimidation. The court also credited appellant's history of unprovoked aggression toward "crackheads" and self-professed enjoyment of assaulting such individuals. The court found that appellant admitted to selling crack cocaine in exchange for the opportunity to drive a vehicle, and his use of cannabis and opioids.

Appellant argues that he has no history of adjudicated delinquent behavior, only four infractions while in supervision, and a positive recommendation from his juvenile supervision officer, who testified that he is cooperative, helpful, and bright. Section 54.02(f)(3) asks the court to consider the record and previous history of the child, but it does not limit the court to adjudicated delinquent behavior. As such, the juvenile court is free to consider unadjudicated previous history, such as appellant's admitted use of illegal drugs, underage driving, assaultive behavior toward drug abusers, rival gang members, and his stepfather, and his gang association. Appellant's good behavior while in the Juvenile Detention Center is commendable, but the juvenile court was nevertheless entitled to consider the four infractions that appellant received there as well. All of these facts find support in the evidence adduced at the hearing. As such, we hold that the court's findings were supported by legally sufficient evidence. In addition, considering all of the evidence in a neutral light, including the evidence of appellant's more recent good behavior, we conclude that the trial court's findings were not against the great weight and preponderance of the evidence. We hold that the court's findings were supported by factually sufficient evidence.

### 4.   Protection of the public and rehabilitation of the child

The fourth statutory factor balances the "prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures,

services, and facilities currently available to the juvenile court." *Id.* § 54.02(f)(4). The court found there was "little, if any, prospect of adequate protection of the public and little, if any, likelihood of reasonable rehabilitation" of appellant by use of the procedures, services, and facilities available to the juvenile court. The court listed several reasons for its determination, including that appellant was at a high risk for reoffending if he stayed in the juvenile system, he was "not amenable to treatment and rehabilitation," and he had "exhibited a danger to society and to the public."

In support of the finding of a high risk of reoffending, the court stated its finding was based on "a review of all of the evidence that was presented," including "the facts and circumstances of the offense," Dr. Wittig's psychological evaluation, and the testimony of Dr. Chibueze. Although Dr. Chibueze characterized appellant's risk for reoffending as "Moderately High," which the juvenile court expressly acknowledged, the other evidence referenced in the order supported the characterization of the risk of reoffending as "high," including his gang affiliation, his drug use, and Dr. Wittig's characterization of him as "at some chronic risk for self-destructive and aggressive behaviors in light of his current situation and his history."

The finding that appellant was "not amenable to treatment and rehabilitation" was based on Dr. Chibueze's opinion that appellant's gang

19

involvement and pervasive history of violating people's rights mitigated against his ability to benefit from treatment. Appellant also relies on recommendations by Dr. Chibueze and Dr. Wittig regarding possible treatments that might be beneficial to him. He argues, "there is no evidence that the services these doctors recommended could not be provided in the juvenile system." But the juvenile court's finding is supported by legally sufficient evidence, and to show that the evidence was factually insufficient, appellant would need to point out specific evidence that outweighs the evidence the court relied on in reaching its conclusion or making its findings. Appellant's reliance on a lack of evidence that the services could not be provided is unpersuasive. We hold that the court's finding that appellant was not amenable to treatment and rehabilitation was not against the great weight and preponderance of the evidence and was supported by factually sufficient evidence.

## B. Review of waiver determination

We have found that the court's factual findings as to the Section 54.02(f) factors are supported by legally and factually sufficient evidence. We have explained that Dr. Chibueze's testimony and report provide legally sufficient evidence to support the trial court's finding regarding appellant's lack of amenability to treatment. And we have demonstrated how appellant has failed to advance an argument on appeal that would show the factual insufficiency of this finding.

With respect to the finding that the alleged offense was against a person, the juvenile court noted this would be given "greater weight in favor discretionary transfer." *See* TEX. FAM. CODE § 54.02(f)(1). The court stated its finding that appellant was of average intelligence weighed "in favor of the Court's waiver of its jurisdiction." *See id.* § 54.02(f)(2). The court found that appellant's previous history weighed "in favor of discretionary transfer." *See id.* § 54.02(f)(3). Finally, the juvenile court indicated its finding of "little, if any, prospect of adequate protection of the public and little, if any, likelihood of reasonable rehabilitation." *See id.* § 54.02(f)(4).

Appellant challenged the juvenile court's determination that the finding about his sophistication and maturity weighed in favor of waiver. He argues that the court provided no justification for its conclusion that an average intellect, above-average maturity, and above-average criminal sophistication weigh in favor of the court's waiver of jurisdiction and transfer to a criminal district court. We have affirmed similar conclusions in other similar cases. *E.g.*, *In re K.J.*, 493 S.W.3d 140, 151 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

The combination of factors that were proved, reflected in the court's findings in accordance with *Moon*, and found by this court to be supported by legally and factually sufficient evidence together support the court's decision to waive its jurisdiction. The juvenile court considered the entirety of the record in

light of the factors set forth in Section 54.02(f) and determined that appellant's lack of prior recorded delinquency history did not outweigh all the other factors favoring waiver of jurisdiction. Because the court's ultimate waiver decision was made with reference to guiding rules and principles such as the factors set forth in Section 54.02(f), we conclude that the court did not abuse its discretion by waiving its jurisdiction. *See Moon*, 451 S.W.3d at 47–49.

## Conclusion

We affirm the order of the juvenile court.


Michael Massengale
Justice

Panel consists of Justices Massengale, Brown, and Huddle.