**Opinion issued March 28, 2019**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00898-CV

_____

## IN THE MATTER OF B.M.

On Appeal from the County Court at Law No. 2
Fort Bend County, Texas
Trial Court Case No. 18-CJV-021629

## MEMORANDUM OPINION

In this accelerated appeal,[1] appellant, B.M., a minor, challenges the juvenile

court's order, entered after a transfer hearing, waiving its exclusive original

---

[1]     *See* TEX. FAM. CODE ANN. § 56.01(c)(1)(A), (h) (providing right to immediate appeal from order "respecting transfer of [a] child for prosecution as an adult" and instructing that appeal from such order has "precedence over all other cases"); *see also* TEX. R. APP. P. 28.1.

jurisdiction over his case and transferring it to a criminal district court for B.M. to be tried as an adult for seven separate felony offenses of aggravated robbery.[2] In his sole issue, B.M. contends that the juvenile court erred in waiving its exclusive original jurisdiction and transferring his case to a criminal district court because the evidence is legally insufficient to support the trial court's findings of probable cause.

We affirm.

## Background

On May 10, 2018, the State filed its first amended petition for discretionary transfer to a criminal district court, alleging that B.M., at age 16:

- on or about January 15, 2018, in Fort Bend County, Texas, did then and there while in the course of committing theft of property owned by Ciro Benitez[, the complainant,] and with intent to obtain and maintain control of the property, intentionally and knowingly threaten and place . . . Benitez in fear of imminent bodily injury and death, and . . . did then and there use and exhibit a deadly weapon, to wit: a firearm; and that this act [was] a violation of section 29.03 of the Texas Penal Code;

- on or about January 15, 2018, in Fort Bend County, Texas, did then and there while in the course of committing theft of property owned by Margarita Cannon[, the complainant,] and with intent to obtain and maintain control of the property, intentionally and knowingly threaten and place . . . Cannon in fear of imminent bodily injury and death, and . . . did then and there use and exhibit a deadly weapon, to wit: a firearm; and that this act [was] a violation of section 29.03 of the Texas Penal Code;

---

[2]  *See* TEX. PENAL CODE ANN. § 29.03(a)(2), (b) (aggravated robbery); *see also id.* § 29.02(a)(2) (robbery).

2

- on or about January 15, 2018, in Fort Bend County, Texas, did then and there while in the course of committing theft of property owned by Allysha Samaniego[, the complainant,] and with intent to obtain and maintain control of the property, intentionally and knowingly threaten and place . . . Samaniego in fear of imminent bodily injury and death, and . . . did then and there use and exhibit a deadly weapon, to wit: a firearm; and that this act [was] a violation of section 29.03 of the Texas Penal Code;

- on or about January 16, 2018, in Fort Bend County, Texas, did then and there while in the course of committing theft of property owned by Lawrence Indefenso[, the complainant,] and with intent to obtain and maintain control of the property, intentionally and knowingly threaten and place . . . Indefenso in fear of imminent bodily injury and death, and . . . did then and there use and exhibit a deadly weapon, to wit: a firearm; and that this act [was] a violation of section 29.03 of the Texas Penal Code;

- on or about January 17, 2018, in Fort Bend County, Texas, did then and there while in the course of committing theft of property owned by Ryane Strother[, the complainant,] and with intent to obtain and maintain control of the property, intentionally and knowingly threaten and place . . . Strother in fear of imminent bodily injury and death, and . . . did then and there use and exhibit a deadly weapon, to wit: a firearm; and that this act [was] a violation of section 29.03 of the Texas Penal Code;

- on or about January 17, 2018, in Fort Bend County, Texas, did then and there while in the course of committing theft of property owned by Charles Borromeo[, the complainant,] and with intent to obtain and maintain control of the property, intentionally and knowingly threaten and place . . . Borromeo in fear of imminent bodily injury and death, and . . . did then and there use and exhibit a deadly weapon, to wit: a firearm; and that this act [was] a violation of section 29.03 of the Texas Penal Code; and

- on or about January 17, 2018, in Fort Bend County, Texas, did then and there while in the course of committing theft of property owned by Lee Tran[, the complainant,] and with intent to obtain

and maintain control of the property, intentionally and knowingly threaten and place . . . Tran in fear of imminent bodily injury and death, and . . . did then and there use and exhibit a deadly weapon, to wit: a firearm; and that this act [was] a violation of section 29.03 of the Texas Penal Code.

Pursuant to Texas Family Code section 54.02, the State requested that the juvenile court waive its exclusive original jurisdiction over B.M.'s case and transfer it to a criminal district court for B.M. to stand trial as an adult for seven separate felony offenses of aggravated robbery.[3]  Prior to the transfer hearing, the juvenile court ordered a psychological evaluation and diagnostic study and a full investigation of B.M., his circumstances, and the circumstances of the alleged offenses.[4]

At the transfer hearing,[5] complainant Benitez testified that on January 15, 2018, he was "robbed at gunpoint" outside his home in a residential subdivision named Mission Bend in Fort Bend County, Texas.  That night, at approximately 2:00 a.m., Benitez went outside to his car.  As he did so, a blue or green car parked next to his car, and two young, thin, Hispanic males, wearing black, exited.  One of

---

[3]   *See, e.g.*, TEX. FAM. CODE ANN. § 54.02(a) (juvenile court may waive its exclusive original jurisdiction and transfer a child to appropriate district court or criminal district court if certain conditions are met).

[4]   *See id.* § 54.02(d) ("Prior to the hearing, the juvenile court shall order and obtain a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense.").

[5]   *See id.* § 54.02(c) (juvenile court "shall conduct a hearing without a jury to consider transfer of the child for criminal proceedings"); *see also id.* § 54.02(e) (at transfer hearing, court may consider "written reports from probation officers, professional court employees, or professional consultants in addition to the testimony of witnesses").

the young men held a black firearm in his hand. The young men told Benitez "to give them everything [that he] had." The young man holding the firearm then "pointed it down and shot or fired [it] at [Benitez's] yard." Benitez feared injury or death and gave the young men his wallet, which contained $440. One of the young men also took Benitez's cellular telephone. After the two young men left, Benitez called for emergency assistance.

Complainant Cannon testified that on January 15, 2018, she was the complainant in an aggravated robbery outside her home in a residential subdivision in Fort Bend County, Texas. That night, at approximately 3:00 a.m. or 3:30 a.m., she went outside to her truck. As she sat in her truck, a person knocked loudly on her driver's side window. Cannon turned and saw a young, thin, Hispanic male, approximately sixteen years old, wearing a gray "hoodie."[6] When Cannon lowered her truck's window, the young man put a black firearm close to her face and "asked [her] to give him whatever [she] had." When she told him that she "didn't have anything," the young man "fired a shot." Cannon feared serious bodily injury or death and gave the young man her bag. The young man then got into the passenger's side of a gray car, which another person was driving, and drove off quickly. Cannon

---

[6]     *See Green v. State*, No. 14-10-00438-CR, 2012 WL 2783862, at *1 (Tex. App.— Houston [14th Dist.] July 10, 2012, pet. ref'd) (mem. op., not designated for publication) (noting "hoodie[]" constitutes "[a] hooded sweatshirt[]" (internal quotations omitted)).

5

called for emergency assistance. After a law enforcement officer came to Cannon's home, the officer found a shell casing from the firearm that the young man had shot.

Complainant Samaniego testified that in January 2018, she lived in a residential subdivision named Mission Bend in Fort Bend County, Texas. On the night of the aggravated robbery, at approximately 4:00 a.m., she drove her car into her driveway and began gathering her things. As she sat in her car, Samaniego heard "a bang" on her driver's side window and saw a young man with a light complexion. The young man yelled, "Give me your stuff," and pointed "a dark colored" firearm at her face. (Internal quotations omitted.) He reached for her cellular telephone, which Samaniego dropped, and then for Samaniego's car keys, which she was holding. The young man grabbed her keys, Samaniego yelled "stop," and the young man "chunked [her keys] . . . towards the back of [her] car." Samaniego feared injury or death. The young man then got into the passenger's side of a car, which another person was driving, and drove away quickly. Samaniego called for emergency assistance. Samaniego noted that the young man ultimately did not take her cellular telephone because she dropped it, and although he took her car keys, he did not keep them; instead, he threw them across the street.

Complainant Indefenso testified that on January 16, 2018, he was "robbed [at] gunpoint" outside his home in a residential subdivision named Teal Briar in Fort Bend County, Texas. That night, at approximately 12:00 a.m., Indefenso sat in his

car in his driveway and a young male, wearing a gray "hoodie," "bang[ed] on" his driver's side window with "a silver pistol." The young man told Indefenso to open his window and stated that he would "shoot" Indefenso. Once he rolled down his window, the young man told Indefenso to "give [him] . . . everything [t]hat [he] got." Indefenso feared injury or death and gave the young man his wallet, which contained $20, and his cellular telephone. The young man ran away, and Indefenso heard the wheels of a car, although he did not actually see the car. Indefenso's brother called for emergency assistance. Law enforcement officers later notified Indefenso that "they got the guy," and officers returned Indefenso's cellular telephone, which had been found.

Complainant Strother testified that on January 17, 2018, she was "robbed at gunpoint" outside her home in a residential subdivision named Village of Oak Lake in Fort Bend County, Texas. On that night, Strother was sitting in her car in her driveway when she heard a "big bang" on her driver's side door. Strother turned and saw a young, Hispanic male, with a fair complexion, wearing a gray "hoodie" and holding a firearm. The young man pointed the firearm at Strother and said, "Give me your shit." (Internal quotations omitted.) Strother feared serious injury or death and gave the young man her purse. Strother's mother called for emergency assistance.

Strother noted that during the aggravated robbery the young man's silver car was parked in front of her house with another person inside. And although she could not see the other person inside the car, she heard him tell the young man to "hurry up."

Strother further testified that later that night law enforcement officers informed her that they had found the young man that may have committed the robbery, and Strother went to the location where he had been apprehended. Strother identified B.M. as the young man that had taken her purse that night. Strother also identified B.M. at the transfer hearing. According to Strother, a few weeks after the aggravated robbery, law enforcement officers returned her cellular telephone and her "card," which they had found in B.M.'s possession.

Complainant Borromeo testified that on January 17, 2018, after 6:00 p.m., he was unloading groceries from his mother's car outside his home in a residential subdivision named Glen Laurel in Fort Bend County, Texas. It was dark outside, and when Borromeo walked to his mother's car to lock it, he saw a gray or silver car stop in front of his house. A young, Hispanic male, approximately sixteen to eighteen years old, wearing a gray "hoodie" exited the car from the passenger's side and walked up Borromeo's driveway. Although Borromeo did not see the driver of the car, he knew, because the young man had come from the passenger's side of the car, that there was also a driver. Initially, the young man asked for directions, but

8

as he approached Borromeo, he "drew up . . . a dark color[ed] handgun" and pointed it at Borromeo's chest. The young man then said "give me . . . any money, credit card, anything." When Borromeo stated that all he had was his mother's car keys, the young man looked at Borromeo's house and asked if there was anyone else at home. Borromeo replied, "yes"; and the young man looked at the house again, told Borromeo that he was "lucky," and ran back to his car. The car drove away quickly. Borromeo called for emergency assistance. Borromeo noted that throughout his entire exchange with the young man, the young man had his firearm pointed at Borromeo's chest, and Borromeo feared serious injury or death.

After a law enforcement officer arrived at Borromeo's home that night, the officer informed Borromeo that he was "aware that . . . similar robberies . . . and similar situations w[ere] happening within the vicinity" around the same timeframe. Later that night, the law enforcement officer returned to Borromeo's home and informed him that officers may have found the young man who had committed the robbery and "his accomplice." Borromeo went to the location where the young man had been apprehended, and he identified B.M. as the young man who had pointed a firearm at him that night. Borromeo also identified B.M. at the transfer hearing.

Sugar Land Police Department Officer J. Hatfield testified that on January 17, 2018, at approximately 8:00 p.m., he was dispatched to a home in Fort Bend County, Texas related to an aggravated robbery. Upon arrival, he spoke with complainant

9

Tran who told him that when he and his family arrived home that night, Tran stopped his car in the driveway. A young, teenage, Hispanic male, wearing a "gray sweatshirt with the hood up," then said to Tran, "Stop right there, give me your phone and wallet." The young man had a "[s]ilver and black colored handgun," and he took Tran's wallet and cellular telephone while pointing the firearm at Tran. The young man then returned to the passenger's side of a "silver colored . . . sedan" and left. Tran did not see the driver of the car. Tran told Hatfield that he feared serious bodily injury and death, and he cooperated with the young man because the man had pointed a firearm at him.

Officer Hatfield further testified that later that night, law enforcement officers "located a silver colored . . . sedan" and made a traffic stop. Tran went to the location where a young man had been apprehended and identified B.M. as the young man who had pointed the firearm at him. Hatfield noted that B.M. had been found in the passenger's side of the silver car, wearing a gray sweatshirt with a hood. Law enforcement officers found a firearm and Tran's cellular telephone in the car's glove box, which was located in front of where B.M. was sitting. Officers also found Tran's wallet "in the area of the [car's] driver's seat."

Fort Bend County Sheriff's Office Detective D. Williams testified that aggravated robbery is a first degree felony offense under Texas Penal Code section 29.03. Regarding the Benitez aggravated robbery, Williams explained that on

January 15, 2018, Benitez was the complainant in an aggravated robbery. On that night, at 2:07 a.m., a law enforcement officer was dispatched to Benitez's home. Benitez told the officer that he had been "robbed by two unknown Hispanic males," who were in a "small silver four-door passenger car." Benitez explained that the men demanded money, they took $440 and his cellular telephone, and they shot a firearm once at the grass at the end of his driveway. According to Williams, while being interviewed by law enforcement officers, another individual, J.H., confessed to the Benitez aggravated robbery and implicated B.M. J.H. explained that he and B.M. "were following another vehicle when they saw [Benitez], . . . they both got out of the[ir] vehicle[,] and [J.H.] had possession of . . . a semi-automatic handgun." "[A]t first, [J.H.] did not have his finger on the trigger when he pointed the gun at [Benitez], and then he did" when he pointed it at Benitez's legs. J.H. told Benitez, "Give me everything you got," and when Benitez "didn't want to," J.H. "pointed the gun at the ground and shot into the grass." (Internal quotations omitted.) Benitez "got scared and gave up his wallet," and B.M. "was checking him." According to J.H., Benitez had "three $100 bills and six $20 bills" in his wallet.

Regarding the Cannon aggravated robbery, Williams testified that on January 15, 2018, Cannon was the complainant in an aggravated robbery. On that night, a law enforcement officer was dispatched at 3:57 a.m. to Cannon's home in Fort Bend County, Texas. Cannon told the officer that she was sitting in her car when a

11

Hispanic male wearing a gray "hoodie" tapped on her window with a firearm. Cannon described the firearm as a "black semi-automatic handgun" and stated that the young man was in a "gray four-door car." Cannon further told the officer that the man had fired one shot with his firearm, and law enforcement officers recovered a shell casing from Cannon's driveway. Williams noted that after a similar aggravated robbery occurred on January 17, 2018, two individuals in a silver four-door car were apprehended and a firearm was recovered. The shell casing found in Cannon's driveway matched the firearm recovered by officers on January 17, 2018.

Detective Williams further testified, related to the Cannon aggravated robbery, that he interviewed J.H., who confessed to committing the aggravated robbery. J.H. also implicated B.M., stating that he and B.M. "had robbed a female in her driveway and [B.M.] had been the one to go up to the lady in her car." Further, according to J.H., B.M. "fired off about two rounds and . . . got back in the car."

Regarding the Samaniego aggravated robbery, Detective Williams testified that on January 15, 2018, Samaniego was the complainant in an aggravated robbery. On that night, a law enforcement officer was dispatched to Samaniego's home at 4:01 a.m. Samaniego stated that an "unknown male suspect dropped a black bandana as well as a business card holder at the end of her driveway." During his interview with law enforcement officers, J.H. stated that he had committed the

12

Samaniego aggravated robbery and he implicated B.M. J.H. explained that "he had [a] gun, he pointed it at" Samaniego and he "grabbed her cell phone out of her hand." J.H. stated that B.M. was "driving the car in th[e] incident." Samaniego identified J.H. in a photographic array as the person who had robbed her.

Regarding the Indefenso aggravated robbery, Detective Williams testified that on January 16, 2018, Indefenso was the complainant in an aggravated robbery. On that night, at 12:48 a.m., a law enforcement officer was dispatched to Indefenso's home in Fort Bend County, Texas. Indefenso told the officer that he "heard a male voice say, 'Open the door or I'm going to shoot you.'" According to Indefenso, the man had a "gray and silver handgun," and he took Indefenso's wallet, cellular telephone, driver's license, debit card, and credit card. During his interview with law enforcement officers, J.H. stated that "he did not participate in" the Indefenso aggravated robbery, but he implicated B.M., explaining that B.M. told him that he had "hit[] a lick." Indefenso's cellular telephone was later recovered by law enforcement officers.

Regarding the Strother aggravated robbery, Detective Williams testified that on January 17, 2018, Strother was the complainant in an aggravated robbery in Fort Bend County, Texas. Strother told law enforcement officers that "the suspect [was] a Hispanic male, thin build, . . . and 15 to 17 years old[,] wearing a gray hoodie." She described the firearm that the man used as "[a] small gray pistol," and she stated

13

that his car was "a silver or white colored passenger car, four-door." According to Williams, during his interview with law enforcement officers, J.H. confessed to the Strother aggravated robbery and implicated B.M. J.H. further stated that the firearm used in the robbery belonged to B.M. On January 17, 2018, Strother identified B.M. as the person who had robbed her.

Finally, Detective Williams testified that J.H. and B.M. committed multiple aggravated robberies in Fort Bend County and Harris County, and on January 17, 2018, three individuals identified B.M. as the person who had robbed them.[7]

After the transfer hearing, the juvenile court found that there was probable cause to believe that B.M. committed seven separate felony offenses of aggravated robbery, as alleged in the State's first amended petition for discretionary transfer to a criminal district court. The court also found, based on the seriousness of the alleged offenses and B.M.'s background, that the welfare of the community required criminal proceedings. The juvenile court waived its exclusive original jurisdiction over B.M.'s case and ordered it transferred to a criminal district court for B.M. to stand trial as an adult.

---

[7]     Dr. Karen Gollaher, a psychologist, Jennifer Adair, the psychology division supervisor for the juvenile probation department, and Gregory Taylor, a juvenile probation officer for Fort Bend County, Texas, also testified at the transfer hearing.

## Standard of Review

The Juvenile Justice Code governs proceedings in all cases involving the delinquent conduct of an individual who was a child at the time he engaged in the conduct. TEX. FAM. CODE ANN. § 51.04(a); *see also id.* §§ 51.02(2) (defining child), 51.03(a) (defining delinquent conduct). The juvenile court has exclusive original jurisdiction over all proceedings governed by the Juvenile Justice Code. *Id.* § 51.04(a); *see also Moon v. State*, 451 S.W.3d 28, 37–38 (Tex. Crim. App. 2014).

However, a juvenile court may waive its exclusive original jurisdiction after an evidentiary hearing and transfer a child to the appropriate district court or criminal district court for criminal proceedings if certain conditions are met. *See, e.g.*, TEX. FAM. CODE ANN. § 54.02(a), (c); *see also Moon*, 451 S.W.3d at 38 ("The right of the juvenile offender to remain outside the jurisdiction of the criminal district court . . . is not absolute."); *In re J.W.W.*, 507 S.W.3d 408, 414 (Tex. App.— Houston [1st Dist.] 2016, no pet.) (noting "Juvenile Justice Code provides three mechanisms by which a juvenile court may waive its exclusive jurisdiction over a juvenile offender").

For instance, under Texas Family Code section 54.02(a), a juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings if: (1) the child is alleged to have violated a penal law of the grade of felony; (2) the child was fourteen years of

age or older at the time he is alleged to have committed the offense, if the offense is a felony of the first degree, and no adjudication hearing has been conducted concerning the offense; and (3) after a full investigation and hearing, the juvenile court determines that there is probable cause to believe that the child committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child, the welfare of the community requires criminal proceedings. *See* TEX. FAM. CODE ANN. § 54.02(a); *see also In re C.R.*, Nos. 01-18-00185-CV to 01-18-00188-CV, --- S.W.3d ---, 2018 WL 4190051, at *5 (Tex. App.—Houston [1st Dist.] Aug. 31, 2018, no pet.). In determining whether the welfare of the community requires criminal proceedings, the juvenile court must consider: (1) whether the alleged offense was against a person or property, with greater weight in favor of transfer given to an offense against the person; (2) the child's sophistication and maturity; (3) the child's record and previous history; and (4) the prospects of adequate protection of the public and the likelihood of the child's rehabilitation by use of procedures, services, and facilities available to the juvenile court. *See* TEX. FAM. CODE ANN. § 54.02(f); *Moon*, 451 S.W.3d at 38; *In re E.H.*, No. 01-16-00802-CV, 2017 WL 3526717, at *4 (Tex. App.—Houston [1st Dist.] Aug. 17, 2017, no pet.) (mem. op.). Any combination of these factors may suffice to support a waiver of jurisdiction; not every criterion need weigh in favor of transfer. *Moon*, 451 S.W.3d at 47 & n.78. If the juvenile court waives its

jurisdiction, then it must specifically state its reasons for doing so in a written order. *See* TEX. FAM. CODE ANN. § 54.02(h).

On appeal from a juvenile court's order waiving its exclusive jurisdiction, we first review the legal and factual sufficiency of the evidence to support the juvenile court's specific findings of fact. *See Moon*, 451 S.W.3d at 47, 50; *In re J.W.W.*, 507 S.W.3d at 413. Our review is limited to the facts that the juvenile court expressly relied upon in its transfer order. *Moon*, 451 S.W.3d at 50; *In re J.W.W.*, 507 S.W.3d at 413.

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the juvenile court's findings and disregard contrary evidence unless a reasonable fact finder could not reject it. *In re C.R.*, 2018 WL 4190051, at *5; *In re S.G.R.*, 496 S.W.3d 235, 239 (Tex. App.—Houston [1st Dist.] 2016, no pet.). If there is more than a scintilla of evidence to support the findings, then the evidence is legally sufficient. *In re C.R.*, 2018 WL 4190051, at *5; *In re S.G.R.*, 496 S.W.3d at 239. Under a factual sufficiency review, we consider all the evidence presented to determine if the juvenile court's findings conflict with the great weight and preponderance of the evidence so as to be clearly wrong or unjust.[8] *In re C.R.*, 2018 WL 4190051, at *5; *In re S.G.R.*, 496 S.W.3d at 239.

---

[8] On appeal, B.M. does not challenge the factually sufficiency of the trial court's probable-cause findings.

17

If the findings of the juvenile court are supported by legally- and factually-sufficient evidence, then we review for an abuse of discretion the juvenile court's conclusion that the welfare of the community requires criminal proceedings because of the seriousness of the alleged offense or the background of the child.[9] *Moon*, 451 S.W.3d at 47. As with any decision that lies within the discretion of the trial court, the salient question is not whether we might have decided the issue differently. *Id.* at 49; *In re J.W.W.*, 507 S.W.3d at 413. Instead, we consider in light of our review of the sufficiency of the evidence whether the juvenile court's decision represents a reasonably principled application of the Texas Family Code section 54.02(f) factors or was essentially arbitrary or made without reference to the statutory criteria for waiver. *Moon*, 451 S.W.3d at 47; *In re J.W.W.*, 507 S.W.3d at 413. As long as the juvenile court correctly applies the statutory criteria and complies with the requirement to specifically state its supporting findings, its waiver decision generally will pass muster under this standard of review. *Moon*, 451 S.W.3d at 49.

## Probable Cause

In his sole issue, B.M. contends that the juvenile court erred in waiving its exclusive original jurisdiction and transferring his case to a criminal district court

---

[9] On appeal, B.M. also does not challenge the juvenile court's conclusion, based on the seriousness of the alleged offenses and his background, that the welfare of the community requires criminal proceedings.

because the evidence is legally insufficient to support the trial court's findings of probable cause that B.M. committed seven separate felony offenses of aggravated robbery, as alleged by the State.

A transfer hearing is not held for the purpose of determining guilt or innocence; it is held for the purpose of establishing whether the child's and society's best interests are met by maintaining custody of the child in the juvenile system or by transferring the child to a criminal district court for trial as an adult. *State v. Lopez*, 196 S.W.3d 872, 874 (Tex. App.—Dallas 2006, pet. ref'd); *In re A.A.*, 929 S.W.2d 649, 653 (Tex. App.—San Antonio 1996, no writ). The juvenile court needs only to determine probable cause that the child committed the offenses charged. *L.M.C. v. State*, 861 S.W.2d 541, 542 (Tex. App.—Houston [14th Dist.] 1993, no pet.); *In re A.A.*, 929 S.W.2d at 653. The trial court is the sole fact finder in a transfer hearing and may choose to believe or disbelieve any or all of the witnesses' testimony. *In re D.W.L.*, 828 S.W.2d 520, 525 (Tex. App.—Houston [14th Dist.] 1992, no writ).

In evaluating a determination of probable cause, we consider whether there are sufficient facts and circumstances to support a prudent person's belief that the accused child committed the offenses. *See In re C.R.*, 2018 WL 4190051, at *5; *In re C.C.*, 930 S.W.2d 929, 933 (Tex. App.—Austin 1996, no writ). The probable-cause standard "requires more than mere suspicion but less evidence than

needed to support a conviction or support a finding by a preponderance of the evidence." *In re C.M.M.*, 503 S.W.3d 692, 702 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (citing *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997)); *see also In re C.R.*, 2018 WL 4190051, at *5. Courts apply a "totality-of-the-circumstances" analysis to determine probable cause. *In re C.R.*, 2018 WL 4190051, at *5 (internal quotations omitted); *see also Manuel v. State*, 481 S.W.3d 278, 283 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). In other words, rather than analyzing each piece of evidence in isolation, the juvenile court evaluates probable cause by considering whether there are sufficient facts and circumstances to justify a prudent person in believing that the child committed the offenses. *In re D.R.B.*, No. 01-16-00442-CV, 2016 WL 6873067, at *5 (Tex. App.—Houston [1st Dist.] Nov. 22, 2016, no pet.) (mem. op.).

Relevant to the instant case, a person commits the felony offense of robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE ANN. § 29.02(a)(2), (b). A person commits the felony offense of aggravated robbery if he commits a robbery and "uses or exhibits a deadly weapon." *Id.* § 29.03(a)(2), (b). A firearm is considered a deadly weapon per se. *Id.* § 1.07(a)(17)(A); *Sholars v. State*, 312 S.W.3d 694, 703 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). "'In the course

20

of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." TEX. PENAL CODE ANN. § 29.01(1). Theft is the unlawful appropriation of property with intent to deprive the owner of the property. *Id.* § 31.03(a).

In reaching its probable-cause determination in this case, the juvenile court considered the testimony and documentary evidence admitted at the transfer hearing. The juvenile court then found that there was probable cause to believe that B.M. had committed the seven separate felony offenses of aggravated robbery, as charged by the State. The record supports the trial court's findings.

### A. January 15, 2018 Aggravated Robberies

### 1. The Benitez Aggravated Robbery

The record shows, related to the Benitez aggravated robbery, that on January 15, 2018, complainant Benitez was "robbed at gunpoint" outside his home in a residential subdivision named Mission Bend in Fort Bend County, Texas. That night, at approximately 2:00 a.m., Benitez went outside to his car, and as he did so, another car parked next to him. Two young, thin, Hispanic males, wearing black, then exited the car, and one of the young men had a black firearm in his hand. The young men told Benitez "to give them everything [that he] had." And the young man with the firearm "pointed it down and shot or fired [it] at [Benitez's] yard."

21

Benitez feared injury or death and gave the young men his wallet, which contained $440. One of the young men also took Benitez's cellular telephone.

At 2:07 a.m., a law enforcement officer was dispatched to Benitez's home. Benitez told the officer that he had been "robbed by two unknown Hispanic males," who were in a "small silver four-door passenger car."[10] Benitez explained that the men demanded money, they took $440 and Benitez's cellular telephone, and they shot the firearm once at the grass at the end of his driveway.

J.H., when interviewed by law enforcement officers, confessed to the Benitez aggravated robbery and implicated B.M. According to J.H., when he and B.M. saw Benitez, they both got out of their car, with J.H. carrying a "semi-automatic handgun." "[A]t first, [J.H.] did not have his finger on the trigger when he pointed the gun at [Benitez], and then he did" when he pointed it at Benitez's legs. J.H. told Benitez, "Give me everything you got," and when Benitez "didn't want to," J.H. "pointed the gun at the ground and shot into the grass." (Internal quotations omitted.) Benitez "got scared and gave up his wallet," and B.M. "was checking

---

[10] At the transfer hearing, Benitez testified that the young men were driving a blue or green car, rather than a silver car. However, he also testified that he did not have any reason to lie to the law enforcement officer on the night of the aggravated robbery and he told him "everything that [had] happened at that moment." In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the juvenile court's findings and disregard contrary evidence unless a reasonable fact finder could not reject it. *In re C.R.*, Nos. 01-18-00185-CV to 01-18-00188-CV, --- S.W.3d ---, 2018 WL 4190051, at *5 (Tex. App.—Houston [1st Dist.] Aug. 31, 2018, no pet.); *In re S.G.R.*, 496 S.W.3d 235, 239 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

him." According to J.H., Benitez had "three $100 bills and six $20 bills" in the wallet.

At the transfer hearing, B.M. conceded that the State had established probable cause for the Benitez aggravated robbery.

### 2.     The Cannon Aggravated Robbery

Regarding the Cannon aggravated robbery, the record shows that on January 15, 2018, at approximately 3:00 a.m. or 3:30 a.m., complainant Cannon went outside her home, which was located in a residential subdivision in Fort Bend County, Texas. As Cannon sat in her truck, a young, thin, Hispanic male, approximately sixteen years old, wearing a gray "hoodie," knocked loudly on her driver's side window. The young man put a black firearm close to Cannon's face, and "asked [her] to give him whatever [she] had." When she told him that she "didn't have anything," the young man "fired a shot." Cannon feared serious bodily injury or death and gave the young man her bag. The young man then got into the passenger's side of a gray car, which another person was driving, and drove off quickly.

At 3:57 a.m., a law enforcement officer was dispatched to Cannon's home. Cannon told the officer that she was sitting in her car when a Hispanic male wearing a gray "hoodie" tapped on her window with a "black semi-automatic handgun." Cannon described the young man's car as a "gray four-door car," and she told the officer that the young man had fired one shot with his firearm.

23

That night law enforcement officers recovered a shell casing from Cannon's driveway. That shell casing was later found to match a firearm recovered by law enforcement officers on January 17, 2018, after officers apprehended two individuals, including B.M., in a silver four-door car following a similar aggravated robbery. B.M. was found in the passenger's side of the silver car, and law enforcement officers found the firearm in the silver car's glove box, which was located in front of where B.M. was sitting. Strother, Borromeo, and Tran, who were the complainants in the three aggravated robberies that occurred on January 17, 2018, each identified B.M. as the person who had robbed them that day.

When law enforcement officers interviewed J.H., he confessed to the Cannon aggravated robbery and implicated B.M. as also being involved. J.H. stated that he and B.M. "had robbed a female in her driveway and [B.M.] had been the one to go up to the lady in her car." Further, according to J.H., B.M. "fired off about two rounds and . . . got back in the car."

At the transfer hearing, B.M. conceded that the State had established probable cause for the Cannon aggravated robbery.

### 3. The Samaniego Aggravated Robbery

With respect to the Samaniego aggravated robbery, the record shows that in January 2018, at approximately 4:00 a.m. on the night of the aggravated robbery, complainant Samaniego sat in her car in her driveway at her home in a residential

24

subdivision named Mission Bend in Fort Bend County, Texas. As Samaniego sat in her car, she heard "a bang" on her driver's side window and saw a young man with a light complexion. The young man yelled, "Give me your stuff," and pointed "a dark colored" firearm at her face. (Internal quotations omitted.) He reached for her cellular telephone, which Samaniego dropped, and he grabbed the car keys out of her hand. Samaniego yelled for the young man to "stop," and he "chunked [her keys] . . . towards the back of [her] car." Samaniego feared injury or death. The young man got into the passenger's side of a car, which had another person driving, and drove away quickly.

Subsequently, law enforcement officers interviewed J.H., who stated that he had committed the Samaniego aggravated robbery. J.H. also implicated B.M. According to J.H., he pointed a firearm at Samaniego and "grabbed her cell phone out of her hand," and B.M. drove the car during the robbery. Samaniego identified J.H. in a photographic array as the person who had robbed her.

**B.      January 16, 2018 Indefenso Aggravated Robbery**

Related to the Indefenso aggravated robbery, the record shows that on January 16, 2018, complainant Indefenso was "robbed [at] gunpoint" outside his home in a residential subdivision named Teal Briar in Fort Bend County, Texas. That night, at approximately 12:00 a.m., while Indefenso sat in his car in his driveway, a young man, wearing a gray "hoodie," "bang[ed] on" his driver's side window with "a silver

25

pistol" or a "gray and silver handgun." The young man told Indefenso to "give [him] . . . everything [t]hat [he] got" and stated that he would "shoot" Indefenso. Indefenso feared injury or death and gave the young man his wallet, which contained $20, and his cellular telephone. The young man ran away, and Indefenso heard the wheels of a car, although he did not actually see a car.

At 12:48 a.m., a law enforcement officer was dispatched to Indefenso's home, and Indefenso told him that he heard a man, with a firearm, say, "Open the door or I'm going to shoot you." (Internal quotations omitted.) Indefenso also stated that the young man took his wallet, cellular telephone, driver's license, debit card, and credit card. Law enforcement officers later returned Indefenso's cellular telephone, which they had recovered after "they got the guy."

Law enforcement officers interviewed J.H., who stated that he did not participate in the Indefenso aggravated robbery. However, J.H. implicated B.M. and stated that B.M. had told him that he had "hit[] a lick."

### C.    January 17, 2018 Aggravated Robberies

#### 1.    Strother Aggravated Robbery

The record reveals, related to the Strother aggravated robbery, that on January 17, 2018, complainant Strother was "robbed at gunpoint" outside her home in a residential subdivision named Village of Oak Lake in Fort Bend County, Texas. On that night, Strother, while sitting in her car in her driveway, heard a "big bang" on

26

her driver's side door. She turned and saw a young, Hispanic male, with a fair complexion, wearing a gray "hoodie" and holding "[a] small gray pistol." The young man pointed a firearm at Strother and said, "Give me your shit." (Internal quotations omitted.) Strother gave the young man her purse, as she feared serious injury or death.

During the aggravated robbery, the young man's silver or white four-door car was parked in front of Strother's house and another person inside the car told the young man to "hurry up." Strother told law enforcement officers that the young man was "a Hispanic male, thin build, . . . and 15 to 17 years old[,] wearing a gray hoodie."

Later that night, law enforcement officers "located a silver colored . . . sedan" and made a traffic stop. B.M. was found in the passenger's side of the silver car and was wearing a gray sweatshirt with a hood. A firearm was found in the car's glove box, which was located in front of where B.M. was sitting. The firearm matched the shell casing found in complainant Cannon's driveway.

Subsequently, Strother went to the location where B.M. had been apprehended, and she identified B.M. as the young man that had robbed her. She also identified B.M. at the transfer hearing. Law enforcement officers eventually returned her cellular telephone and her "card," which they had found in B.M.'s possession.

27

While being interviewed by law enforcement officers, J.H. confessed to the Strother aggravated robbery and implicated B.M. J.H. stated that the firearm used in that robbery belonged to B.M. According to Detective Williams, J.H. and B.M. committed multiple aggravated robberies in Fort Bend County and Harris County, and on January 17, 2018, three complainants identified B.M. as the person who had robbed them.

At the transfer hearing, B.M. conceded that the State had established probable cause for the Strother aggravated robbery.

### 2. The Borromeo Aggravated Robbery

Regarding the Borromeo aggravated robbery, the record shows that on January 17, 2018, after 6:00 p.m., complainant Borromeo was outside his home in a residential subdivision named Glen Laurel in Fort Bend County, Texas. It was dark outside, and as Borromeo walked to his mother's car, a gray or silver car stopped in front of his house. A young, Hispanic male, approximately sixteen to eighteen years old, wearing a gray "hoodie" exited the car from the passenger's side and walked up Borromeo's driveway. Although Borromeo did not see the driver of the car, he knew, because the young man had come from the passenger's side of the car, that there was a driver. As the young man approached Borromeo, he "drew up . . . a dark color[ed] handgun" and pointed it at Borromeo's chest. The young man then said "give me . . . any money, credit card, anything." When Borromeo stated that all he

28

had was his mother's car keys, the young man looked at Borromeo's house and asked if there was anyone else at home. Borromeo replied, "yes"; and the young man looked at the house again, told Borromeo that he was "lucky," and ran back to his car. Throughout Borromeo's entire exchange with the young man, the young man had his firearm pointed at Borromeo's chest, and Borromeo feared serious injury or death.

Later that night, law enforcement officers "located a silver colored . . . sedan" and made a traffic stop. B.M. was found in the passenger's side of the silver car and was wearing a gray sweatshirt with a hood. A firearm was found in the car's glove box, which was located in front of where B.M. was sitting. The firearm matched the shell casing found in complainant Cannon's driveway.

Subsequently, Borromeo went to the location where B.M. had been apprehended, and he identified B.M. as the young man who had pointed a firearm at him. He also identified B.M. at the transfer hearing. According to Detective Williams, J.H. and B.M. committed multiple aggravated robberies in Fort Bend County and Harris County, and on January 17, 2018, three complainants identified B.M. as the person who had robbed them.

At the transfer hearing, B.M. conceded that the State had established probable cause for the Borromeo aggravated robbery.

### 3. The Tran Aggravated Robbery

With respect to the Tran aggravated robbery, the record shows that on January 17, 2018, before 8:00 p.m., complainant Tran stopped his car in his driveway. A young, teenage, Hispanic male, wearing a "gray sweatshirt with the hood up," then said to Tran, "Stop right there, give me your phone and wallet." The young man had a "[s]ilver and black colored handgun," and he took Tran's wallet and cellular telephone while pointing the firearm at Tran. Tran feared serious bodily injury and death and cooperated because the young man had pointed a firearm at him. The young man returned to the passenger's side of a "silver colored . . . sedan" and left. Tran did not see the driver of the car.

Later that night, law enforcement officers "located a silver colored . . . sedan" and made a traffic stop. B.M. was found in the passenger's side of the silver car and was wearing a gray sweatshirt with a hood. Law enforcement officers also found Tran's wallet in the car and a firearm and Tran's cellular telephone in the car's glove box, which was located in front of where B.M. was sitting. The firearm matched the shell casing found in complainant Cannon's driveway.

Subsequently, Tran went to the location where B.M. had been apprehended, and he identified B.M. as the young man who had pointed the firearm at him. According to Detective Williams, J.H. and B.M. committed multiple aggravated

robberies in Fort Bend County and Harris County, and on January 17, 2018, three complainants identified B.M. as the person who had robbed them.

At the transfer hearing, B.M. conceded that the State had established probable cause for the Tran aggravated robbery.

### D.      B.M.'s Appellate Arguments

On appeal, B.M. first asserts that the State presented "no evidence at all as to the Tran [aggravated] robbery" and there was insufficient evidence to support the trial court's probable-cause finding because complainant "Tran made no identification of B.M. at th[e] hearing."

At the transfer hearing, complainant Tran did not testify.  However, Officer Hatfield testified as to the details of the Tran aggravated robbery, which Tran had told him.  Hatfield also explained that on January 17, 2018—the night that Tran was robbed—after law enforcement officers "located a silver colored . . . sedan" and made a traffic stop, B.M. was found in the passenger's side of the silver car, wearing a gray sweatshirt with a hood.  Law enforcement officers also found Tran's wallet in the car and a firearm and Tran's cellular telephone in the car's glove box, which was located in front of where B.M. was sitting.  On January 17, 2018, Tran identified B.M. as the young man who had pointed the firearm at him that night.  B.M. did not raise any objections to Hatfield's testimony at the transfer hearing.

31

There is no requirement that a complainant identify a child *at a transfer hearing* as the person who committed the alleged offense. And because the transfer hearing is a nonadversary preliminary hearing, the juvenile court may rely upon hearsay as well as written and oral testimony in making its probable-cause findings. *See Navarro v. State*, Nos. 01-11-00139-CR, 01-11-00140-CR, 2012 WL 3776372, at *5 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012 pet. ref'd) (mem. op., not designated for publication); *In re D.W.L.*, 828 S.W.2d at 524. Further, a juvenile court may rely on the testimony of law enforcement officers to support a probable-cause finding, including testimony regarding any statements a complainant made to the officers. *See In re B.N.E.*, 927 S.W.2d 271, 274–75 (Tex. App.—Houston [1st Dist.] 1996, no writ) (concluding officer's testimony sufficient to establish probable cause child committed alleged offenses); *see also Price v. State*, No. 05-01-00854-CR, 2002 WL 1131077, at *2–3 (Tex. App.—Dallas May 30, 2002, no pet.) (not designated for publication) (trial court did not err in admitting officer testimony regarding statements made by complainants); *In re K.R.B.*, No. 04-95-00856-CV, 1996 WL 460027, at *1–2 (Tex. App.—San Antonio Aug. 14, 1996, no writ) (not designated for publication) (juvenile court did not err in relying on officer's testimony concerning probable cause); *In re R.G., Jr.*, 865 S.W.2d 504, 508–09 (Tex. App.—Corpus Christi 1993, no writ) (juvenile court properly found probable cause where sole evidence was officer's testimony); *Edwards v. State*, No.

05-91-00185-CV, 1991 WL 258726, at *1–2 (Tex. App.—Dallas Dec. 3, 1991, writ dism'd w.o.j.) (not designated for publication) (evidence sufficient to support probable-cause finding although only testimony at transfer hearing "came from investigating officers who were not present at the time of the alleged offenses").

Regarding the other six aggravated robberies, B.M. generally asserts that "[t]he testimony elicited . . . failed completely to identify . . . B.M.," was conclusory, and had "very little if any relevance in th[e] juvenile transfer proceeding." Although B.M., in his brief, recounts each witness's testimony in great detail, he does not actually discuss the deficiencies in the evidence that render it legally insufficient to support the juvenile court's probable-cause findings. *See* TEX. R. APP. P. 38.1(i) (brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and to record); *McCarthy v. State*, 65 S.W.3d 47, 49 n.2 (Tex. Crim. App. 2001) (inadequately briefed issue may be waived on appeal).

In any event, we disagree with B.M.'s assertions that the testimony elicited at the transfer hearing was conclusory or of "very little . . . relevance." *See Conclusory*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "conclusory" as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based"); *Relevant Evidence*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "relevant evidence" as "[e]vidence tending to prove or disprove a matter

33

in issue").  And regarding the identification of B.M. as the perpetrator of the aggravated robberies, we note that both complainant Strother and complainant Borromeo identified B.M. as the person with a firearm that robbed them on January 17, 2018.  Further, although Cannon did not identify B.M. specifically as the person who had robbed her on January 15, 2018, J.H. confessed to the Cannon aggravated robbery and stated that he and B.M. "had robbed a female in her driveway and [B.M.] had been the one to go up to the lady in her car."  B.M. also "fired off about two rounds and . . . got back in the car."  B.M. does not assert that the juvenile court could not rely J.H.'s confession to support its probable-cause findings.  *See In re J.D.H.*, Nos. 01-17-00889-CV, 01-17-00890-CV, 2018 WL 2107244, at *9–10 (Tex. App.—Houston [1st Dist.] May 8, 2018, no pet.) (mem. op.) (juvenile court not prohibited from considering evidence obtained from alleged accomplice or co-actor); *In re D.J.*, 909 S.W.2d 621, 622–23 (Tex. App.—Fort Worth 1995, writ dism'd w.o.j.) (confessions of child's accomplices, which implicated child in robberies, admissible at transfer hearing because "[i]n a transfer hearing, the rules of evidence are relaxed"); *see also In re C.R.*, 2018 WL 4190051, at *6.  J.H. also implicated B.M. in the Indefenso aggravated robbery and stated that B.M. had told him that he had "hit[] a lick."  *See In re J.D.H.*, 2018 WL 2107244, at *9–10; *In re D.J.*, 909 S.W.2d at 622–23; *see also In re C.R.*, 2018 WL 4190051, at *6.  And the firearm used in the Indefenso aggravated robbery matched the description of the

34

firearm used in the Strother aggravated robbery, which J.H. had explained was B.M.'s firearm.

Regarding the Samaniego aggravated robbery, complainant Samaniego identified J.H. as the person who had robbed her with a firearm on January 15, 2018, and J.H. told law enforcement officers that although he had committed the Samaniego aggravated robbery, B.M. drove the car during the robbery that night. Further, related to the Benitez aggravated robbery, J.H. told law enforcement officers that both he and B.M. got out of their car, with J.H. carrying a "semi-automatic handgun." "[A]t first, [J.H.] did not have his finger on the trigger when he pointed the gun at [Benitez], and then he did" when he pointed it at Benitez's legs. J.H. told Benitez, "Give me everything you got," and he "pointed the gun at the ground and shot into the grass." (Internal quotations omitted.) Benitez "got scared and gave up his wallet," and B.M. "was checking him."

Under the law of parties, if a defendant "acted with the intent to promote or assist the commission of an offense by encouraging, aiding, or attempting to aid another person in committing the offense, he is just as criminally responsible for the offense as if he had directly committed [the offense] by his own conduct." *Montalvo v. State*, 315 S.W.3d 588, 594 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see also* TEX. PENAL CODE ANN. § 7.01(a), (b) (providing "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct,

35

by the conduct of another for which he is criminally responsible, or by both" and "[e]ach party to an offense may be charged with commission of the offense"). A juvenile court may make its probable-cause findings based on the law of parties. *See In re J.G.*, 495 S.W.3d 354, 373–74 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) ("The State . . . presented sufficient evidence that probable cause existed that [child], under the law of parties, committed the alleged offense of aggravated robbery."); *In re D.L.N.*, 930 S.W.2d 253, 255–57 (Tex. App.—Houston [14th Dist.] 1996, no pet.) (holding evidence sufficient to support probable-cause finding where child committed offense under law of parties).

\* \* \*

After considering the totality of the circumstances and viewing the evidence in the light most favorable to the juvenile court's findings, we conclude that there is more than a scintilla of evidence to support the juvenile court's determination that a prudent person would be justified in believing that B.M. committed seven separate felony offenses of aggravated robbery, as alleged by the State. Accordingly, we hold that the evidence is legally sufficient to support the juvenile court's findings of probable cause.

We overrule B.M.'s sole issue.

## Conclusion

We affirm the juvenile court's order waiving jurisdiction.

Julie Countiss
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Countiss, J., concurring.  Concurring opinion to follow.